## THE VENTURE.[1]

### HOOK and others *v.* THE VENTURE.

*(District Court, W. D. Pennsylvania.* December 12, 1885.)

1. MARITIME LIEN—STATUTORY LIEN.
  The liens against a domestic vessel created by the Pennsylvania statute of April 20, 1858, have priority over a mortgage for purchase money recorded under the act of congress.
2. SAME—SUPPLIES OF COAL.
  Such vessel is subject to a lien for supplies of coal furnished her, although the statute does not expressly mention coal or fuel.
3. SAME—CONSTRUCTION OF PENNSYLVANIA STATUTE.
  This latter construction of the statute has become fixed by long usage and judical recognition.
4. SAME—SERVICES IN HOME PORT.
  No lien in admiralty or under said statute exists for services performed at her home port in raising a sunken vessel.

In Admiralty.

*Sur* exceptions to commissioner's report distributing the proceeds of sale.

On August 19, 1885, a libel was filed against the steamer Venture's owners. A decree was obtained against the boat, and it was condemned, and sold by the United States marshal, and the proceeds of sale paid into court. S. C. McCandless, Esq., was appointed commissioner to distribute the fund among the various creditors, and a portion of his report follows :

"A large number of creditors have been permitted to intervene for their respective interests, the character of whose claims may be classified as liens in admiralty for mariners' wages, liens created by the statute of Pennsylvania relating to the attachment of steam-vessels, and a claim for the balance unpaid of a mortgage on five-sixteenths of the vessel, for the payment of which a claim is set up for one-fourth of this fund remaining after the payment of costs and admiralty liens, and against all claims under the statute above mentioned. This is the mortgage for which suit was brought by John G. Brittain for the purpose of foreclosure at No. 7, October term, 1884, in admiralty of this court, wherein your honor held that the court did not have jurisdiction to enforce it.

"The claims for mariners' wages are, with some slight changes, allowed as presented, after the payment of which, and the costs in the case, claims ascertained to be liens of the second class under the state statute will take the remainder of the fund, unless superseded in part by the mortgage above mentioned. Such being the case, the effect of the mortgage as against this fund may as well be here determined. Objection is made both to the form of the application, and to the claim on its merits. Presuming that, if only objectionable in form, your honor would permit an amendment, I will discuss the claim on its merits.

"Nothwithstanding the many able opinions cited by the learned proctor representing this interest, so far as I am able to ascertain, the decision of the United States circuit court in *Srodes* v. *The Collier*, 2 Pittsb. Rep. 318, has not

[1] From the Pittsburgh Legal Journal.

been overruled by the United States supreme court, and, since rendered, has been the law in this district. The learned proctor's argument seems to me to be answered in every particular, and his position to be fully controverted, by the opinion in that case. I might quote from it extensively, but prefer rather to refer to only that part of it relating to this subject. Opinions of circuit and district judges on both sides of this question have been quoted, but unless found to be decided otherwise by the United States supreme court, or by the judges of the Third circuit, or in this district, I must adhere to it in this matter. The case of *The Lottawanna*, 21 Wall. 558, does not overrule the decision in *Srodes* v. *The Collier*, the *surplus* having there been awarded to the mortgagee, in preference to the claimant to a lien under the statute of Louisiana, *simply* because the latter, claiming a 'privilege,' had not complied with the terms of said statute, and consequently *had no lien*, and the mortgagee, having properly petitioned for the surplus, had it given to him, just as his proportionate share of this fund could be given to the petitioner in this case if there should be a surplus remaining after the payment of the lien claims. Considering, as I do, that the decision in *Srodes* v. *The Collier* has not been overruled, the mortgagee's claim must be postponed to the liens established by the Pennsylvania act of assembly.

"All claims for coal furnished the vessel for fuel are opposed on the ground that fuel is not provided for by the statute. The word 'coal' or 'fuel' is not there mentioned, but it has uniformly been allowed in this district as one of the articles provided for by the section creating liens of the second class. I read that section, omitting whatever cannot relate to this article, in this way: 'For all debts contracted by the owner or owners, agent, consignee, master, clerk, or clerks of such ship, steam or other boats * * * for or on account of work and labor done or materials furnished by * * * *boat, store, or provision furnishers* * * * in the * * * fitting, furnishing, or equipping such ships, steam or other boats,' etc. By reference to the section as printed in Purdon's Digest, (page 97,) it will be observed that, in the part above mentioned, the comma is placed after the word 'boat;' so that we may read it, '*boat furnishers, store and provision furnishers*,' and construe it to mean materials furnished by boat furnishers or persons who furnish boats, etc. Hence the party who supplies fuel burned under the boilers, in the cabin or the kitchen, would have a like claim to the party who furnishes provisions for the table. The case of *Merchant* v. *The Odorilla*, 5 Wkly. Notes Cas. 288, is cited as an authority to sustain this objection. It was there held by the supreme court of Pennsylvania 'that the lien given to vendors of copper sheathing could not be inferentially extended to the case of rings and bolts merely because they formed part of the ordinary business of the libelant.' But a distinction is there made between a lien given to a party following a particular trade or calling and the vendor of a particular thing. To quote from the opinion: 'For example, a lien given to blacksmiths would cover all articles furnished ordinarily belonging to this trade and made by blacksmiths,' but when given to the vendor of a particular thing, although he may sell other articles, the law cannot be made to reach these different subjects of sale. If I am right in my reading of the section, (Purd. 97,) the *boat furnisher* has a lien by reason of his calling, and is not limited like the 'vendor of copper sheathing' mentioned in the opinion. Therefore the bills for fuel furnished the vessel are allowed.

"The claims of William Merrington for raising the steam-boat when sunk, and of Joel Kerr for the hire of crane-boats used in the same work, are opposed as not being provided for in the statute. The opinion of your honor in the case of *The D. S. Newcomb*, reported in 12 Fed. Rep. 735, completely rules out both of these claims, for no lien in admiralty exists because the service was performed at the home port, and the libels cannot be sustained under the local statute. They are therefore excluded therefrom.

"The same objection applies to the claim of George W. Henning *et al.* for testing the boilers of this steam-boat. and to so much of J. S. Adams' bill as is for moving and pumping this boat's fuel flat, and they are also disallowed.

"Felker & Wilson have intervened for the amount of a note given for materials and labor. This is a lien of the third class, unless the date of the original bill, which is beyond the time limited by the statute, would exclude the note also. But as the fund will not extend far enough to reach it, it need not be considered.

"The claim of the city of Pittsburgh, for wharfage, is a fourth-class lien under the statute, but cannot be paid on account of the insufficiency of the fund.

"George Thompson, mate, holds a due-bill, and D. W. C. Carroll, Limited, Louis Kreiling & Son, and Reed & Kreps, hold notes for the amounts due them, respectively. It is hereby suggested that the payment of the amounts awarded these creditors be made conditional upon the surrender of said notes, or their production for the indorsement of the same as a credit.

"The claim of the steamer Ross Miller is objected to for the reason that the items were furnished by a steam-boat, and not by an individual, and therefore do not constitute a lien as provided for by the act of assembly. If the articles furnished were such materials as, if purchased at a boat-store, would create a lien, I do not think that the fact of their having been the property of another boat ought to make any difference."

Exceptions to the commissioner's report were filed and argued by *George C. Wilson, Albert York Smith*, and *W. L. Bird*.

*Edwin W. Smith*, for the report.

*Geo. C. Wilson*, for original libelants.

*Burton & Son*, for Venture owners.

*Bird & Porter*, for mortgage creditor.

*W. C. Moreland*, for City of Pittsburgh.

*Thomas C. Lazear, E. P. & C. W. Jones, J. S. Ferguson, Wesley I. Craig, Knox & Reed, Albert York Smith, L. B. Duff, A. B. Hay, George Elphinstone, George C. Wilson, Barton & Son, Isaac S. Van Voorhis, Morton Hunter, Geo. R. Lawrence, K. T. Friend, A. H. Clark*, and *Geo. W. Acklin*, for intervening creditors.

ACHESON, J. I have carefully examined the report of the commissioner, and am entirely satisfied with his conclusions.

1. The commissioner was clearly right in giving to the liens under the Pennsylvania statute a preference over the mortgage of John G. Brittain. The case of *Srodes* v. *The Collier*, 2 Pittsb. Rep. 304, is decisive of the question. It is altogether a misapprehension to suppose that the authority of that case has been at all shaken by the decision in *The Lottawanna*, 21 Wall. 558. See the case of *The Wm. T. Graves*, 8 Ben. 568.

2. While it is true that "coal" or "fuel" is not expressly mentioned in the statute, yet the general language of the law may well be taken to embrace a claim for coal supplied to and used on a steam-boat. This has been the universal understanding, and claims of this character have been constantly allowed by the court. It is now too late to question a construction of the statute which has been sanctioned by long usage and judicial recognition.

3. The claims of William Merrington, Joel Kerr, and George W. Henning and others are for services not covered by the statute, and were properly disallowed. *The D. S. Newcomb,* 12 Fed. Rep. 735.

And now, December 12, 1885, the exceptions to the report of the commissioner are overruled, and said report is confirmed absolutely; and it is ordered, adjudged, and decreed that the fund be paid out in accordance with the commissioner's schedule of distribution, unless an appeal from this decree be taken within 10 days.