## THE WANDRAHM.

### MERRITT et al. v. MORSE.

(Circuit Court of Appeals, Second Circuit. April 22, 1895.)

### No. 109.

MARITIME LIENS—LABOR AND MATERIAL — CONTRACTS WITH STRANGER TO THE VESSEL

When a person, whose relation to the vessel is unknown, but who is not the apparent agent of the owners (who are unknown, but who can readily be ascertained), makes a contract for something to be done upon the vessel in the line of his known business as a mechanic, the co-contracting party is put upon inquiry to ascertain the powers which he possesses. If no inquiry is made, and nothing is said about the credit of the vessel, the inference is that the co-contracting' party is satisfied with the security of his debtor, and his mere subsequent declaration that he relied upon the credit of the vessel will give him no lien. 62 Fed. 935, affirmed.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

This was a libel by Israel J. Merritt and Israel J. Merritt, Jr., against the steamer Wandrahm, Edward T. Morse, claimant, to enforce an alleged lien for labor and materials. The district court dismissed the libel. 62 Fed. 935. Libelants appeal.

E. G. Benedict, for appellants.

Hyland & Zabriskie, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The facts in this case are peculiar. In June, 1893, the steamship Wandrahm, owned by the Hamburg American Packet Company, a German corporation, was lying, in a damaged condition, in the port of Quebec, Canada. The owner thereupon made a written contract with the shipsmiths and machinists known as the Morse Iron Works Company, hereinafter called the Morse Company, a partnership in the city of Brooklyn, N. Y., to take the steamship from the St. Lawrence river, tow her to New York, and completely repair and restore her, within a specified time, for the sum of $63,000. The contract was thereafter completely executed, and the contract price was paid. On June 24, 1893, Edward P. Morse, one of said firm, wrote the following letter to the libelants:

"Morse Iron Works Co.,

"Shipsmiths, Machinists, and Boilermakers.

"New York, June 24, 1893.

"The Merritt Wrecking Co.—Gentlemen: Kindly send me approximate estimate for furnishing 3 wrecking pumps, with boilers and all gear; also

3 engineers and 2 firemen, 1 diver and tender and foreman. I want your charge per day. We have a steamer in St. Lawrence river, which we propose to bring to New York. We will furnish all transportation and other charges. Steamer has been ashore, but we will make temporary repairs before leaving there, and will only need your men and pumps in case of emergency. Kindly send estimate by bearer, as we have very little time to spare.                                                             E. P. Morse."

The libelants returned a memorandum upon the back of the letter giving the estimate asked for.    Apparently the negotiations ended with this correspondence.    On June 27th the libelants and the Morse Company entered into a written contract for the pay of the men and material to be sent to Quebec.    The contract was silent in regard to any credit to be given to the vessel.    The men and material went to Quebec, and some services were rendered for or upon the vessel.    The libelants did not know, when they entered into the contract, who was the owner of the Wandrahm, did not know the Morse Company, and neither made inquiries as to their credit nor about the ownership of the vessel.    The bill was made out against the Morse Company.    Edward P. Morse appeared as claimant, and answered the libel, which was dismissed by the district court upon the ground that the evidence showed that the libelants relied on the credit of the Morse Company alone.    The district judge says in his opinion:

"In view of all the circumstances, the situation of the vessel, and the fact that the libelants' contract with the Morse Iron Works made no allusion to the credit of the vessel, I am of the opinion that the evidence does not justify holding that the libelants furnished the labor and material on the credit of the vessel, but, on the contrary, shows that the libelants relied on the credit of the Morse Iron Works alone. Upon this ground the libel is dismissed."

It is apparent that the Morse Company were the contractors for the repairs of the steamship; that the owners had given them no power to make contracts which should bind the vessel, and that the libelants were, in fact, subcontractors, who had agreed with the contractors to perform some services upon the vessel at the port of Quebec.    By the maritime law, apart from state statutes, when materials are furnished by a subcontractor, to be used upon a vessel, in pursuance of a contract made by him with the person who is known to be the contractor for the repairs of the vessel, and not to be the agent of the owners, the sale is obviously made on the account of the contractor, and upon his credit.    It is the ordinary case of a sale by one individual to another individual, who is the sole debtor.    If the contractor for repairs upon a vessel is not authorized to employ men or buy materials upon the credit of the owners of the vessel, and the employés or the material men have knowledge of this state of facts, they can have no valid lien for services or materials furnished the contractor and used upon the vessel.    In the absence of knowledge of the nonagency, the subcontractor may have been misled by the apparent power to bind the vessel which the acts or conduct of the owners permitted the contractor to have, and thus a valid lien will be placed upon the vessel.    Smith v. Railroad, 1 Curt. 253, Fed. Cas. No. 13,039; The

Whitaker, 1 Spr. 229, Fed. Cas. No. 17,524. So, also, the person in actual command of the vessel as master, though by fraud, as against the owner, may create a valid lien in favor of a material man who has no notice of circumstances to create suspicion of the pretended master's authority. The Sarah Harris, 13 Blatchf. 503, Fed. Cas. No. 12,347. In this case the Morse Company, who, upon the face of their letters, declare that they are shipsmiths and machinists, ask for the per diem charge for pumps and men to be used in case of emergency upon a steamer which they propose to bring to New York, after having made temporary repairs upon her. It is hardly possible to think that the libelants had adequate reason to suppose that this firm of shipsmiths was the agent of the owner, which had done nothing to constitute the contractors as its agents, or to hold them out to the world as such. The Eledona, 10 Blatchf. 511, Fed. Cas. No. 4,341. When the agreement between the libelants and the contractors was made, the latter were not in the occupancy of the vessel, and so were not apparently in command. The great majority of cases upon the subject of liens in favor of material men arise when the goods or services are ordered by a master, or the agent of the owner, or some person in the manifest possession and control of a vessel in a foreign port, and who is seeking for necessary supplies; and in such cases presumptions of necessity and of power attend the acts of apparent agents which do not exist in this case. The circumstances which are shown in this record are very different, and, unless it can be said that a contract for necessaries to be furnished in a foreign port binds the vessel, when made by the libelant with a mechanic, neither master, owner, agent, nor charterer, and not in an apparent position of agency, made without inquiry as to his authority, and without any manifested intent by either party to bind the vessel, this libel cannot be sustained. The facts disclosed in the shipsmiths' proposition called upon the libelants to make inquiry as to their relations to the vessel, and their power to bind it, if security upon her was desired. When a person, whose relation to the vessel is unknown, but who is not the apparent agent of the owners, who are unknown, but who can readily be ascertained, makes a contract for something to be done upon the vessel, in the line of his known business as a mechanic, the co-contracting party is put upon inquiry to ascertain the powers which the stranger possesses. If no such inquiry is made, and nothing is said about the credit of the vessel, the inference is that the material man was satisfied with the security of the sole debtor, and the mere subsequent declaration of the libelant that he furnished the materials upon the credit of the vessel will not vary the conclusion which is to be drawn from his conduct when the contract was made. The decree of the district court is affirmed, with costs.