## THE PAUL L. BLEAKLEY.

(District Court, S. D. New York. June 6, 1906.)

1. MARITIME LIENS—WRECKING SERVICES—CONTRACT WITH INSURER.

A scow was sunk in the harbor of New York, which was its home port, and on notice thereof by the owner to the insurer the latter agreed to have the vessel raised, and made a contract therefor with libelant, with which it had made similar contracts previously. *Held*, that the insurer

had no authority to bind the vessel for payment, nor did libelant acquire any lien by virtue of the contract, to which the owner had no relation.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Maritime Liens, § 48.]

2. SALVAGE—SALVAGE SERVICE—RAISING SUNKEN VESSEL.

The raising of a scow sunk in its home port under a contract, and where the work involved no element of danger and nothing out of the usual, is not a salvage service, which creates a lien on the vessel.

3. MARITIME LIENS—SUIT TO ENFORCE—LACHES.

The insurer of a sunken scow made a contract with libelant to raise the same. The policy provided that no action thereon for loss or damage to the vessel should be maintained unless commenced within one year. Held, that libelant was barred by laches from maintaining a suit to enforce a lien on the vessel for the service after the expiration of the year, and after the owner's right to recover from the insurer under the policy was barred or had become doubtful.

In Admiralty. Suit in rem to enforce maritime lien.

Avery F. Cushman, for libellant.
Alexander & Ash, for claimant.

ADAMS, District Judge. This was an action brought by the Merritt & Chapman Derrick & Wrecking Company to recover $689 from the scow Paul L. Bleakley, owned by Cara R. Bleakley, for wrecking and salvage services rendered between the 28th of June and the 3rd of July, 1902. The scow sank, with a load of dirt, near Shooter's Island, at the mouth of Newark Bay, in the Harbor of New York, and was raised by the libellant.

It appears that the owner of the boat was insured in the Greenwich Insurance Company for one year from December 31st, 1901. When the sinking occurred, the charterer of the boat communicated with the owner by telephone at Verplancks Point, New York. The owner thereupon requested the charterer's agent in New York and the builder of the boat, near her home, to notify the Insurance Company, which they proceeded to do by calling on its president at the office of the company in New York City. A conversation then took place in which it was arranged that the Insurance Company should attend to having the boat raised. This took place in June shortly subsequent to the sinking. The Insurance Company then made a contract with the libellant by correspondence, running from June 26th to 28th inclusive, which resulted in the raising of the boat and cargo, by the 3rd of July, of which the Insurance Company was notified by the libellant. Subsequently a bill, made to the scow and owner, for the services was sent to the Insurance Company, and later, on the 11th of September, at the instance of the Insurance Company, one was sent to the owner of the scow but was at once returned with the statement that she had nothing to do with it, and the libellant must look to the Insurance Company under the contract. Thereafter some dunning letters were sent by the libellant to the owner and finally the matter was put in the hands of attorneys, who brought this action against the scow.

The libellant's theory is that the services were rendered to the scow, which is liable therefor under the clause in the policy which provides:

"It is agreed that the acts of. the assured or insurers, or their agents, in recovering, saving, and preserving the property insured, in case of disaster, shall not be considered a waiver, or an acceptance of an abandonment, nor as affirming or denying any liability under this Policy; but such acts shall be considered as done for the benefit of all concerned, and without prejudice to the rights of either party. Further, the assured shall not have a right to abandon the vessel in any case, unless the amount which the insurers would be liable to pay under an adjustment as of a partial loss, shall exceed half the amount insured, nor shall detention by the senson, or by any other cause, be alleged or allowed as cause for abandonment. Moreover, no abandonment, in any case whatever, even when the right to abandon may exist, shall be held or allowed as effectual or valid, unless it shall be in writing, signed by the assured and delivered to this Company or to their authorized agent. nor unless it shall be efficient, if accepted. to convey to, and to vest in this Company an unincumbered and perfect title to the subject abandoned; and the valuation of said vessel, expressed in this Policy, shall be considered the value in adjusting losses covered by this Policy."

It is further contended that there was no abandonment, and could be none under the terms of the policy, which is doubtless true.

It is further contended that the Insurance Company and the owner are one and the same toward the libellant and that when the Insurance Company was clothed by the owner with all of her right and power with regard to the scow, the libellant can not be deprived of its maritime lien, which it acquired by reason of its services and the authority of the Insurance Company under the policy to bind the scow. It is further urged that the case is governed by The Dredge No. 1 (D. C.) 137 Fed. 110, where it was held that a salvage claim had priority over earlier judgments in personam. The question of there being a salvage claim in that case was not litigated, the commissioner reporting that the petitioner there was the assignee of a salvage claim. The testimony shows here that the Wrecking Company was in the habit of dealing with the Insurance Company and nothing appears in this case to support a lien.

It does not seem that services of the character rendered here were salvage services. In Merritt & Chapman Derrick & Wrecking Co. v. Morris & Cumings Dredging Co. (C. C. A.) 137 Fed. 780, where a dredge was sunk in New York Harbor and raised in circumstances very similar to these, the Circuit Court of Appeals said:

"The work performed by the libellant, though skilful in execution and successful in result, was in no sense a salvage service. It had in it no element of danger to person or property, which is the principal factor relied on in sustaining large awards in salvage cases.

"The problem of raising the sunken dredge was an exceedingly simple one; no new or difficult questions were presented for solution. The sinking occurred in summer, no storm was raging, the water was comparatively shallow, the bottom was soft mud. The moment the wreckers saw the situation they knew exactly what to do."

There is no lien for raising a sunken vessel in her home port. The D. S. Newcomb (D. C.) 12 Fed. 735; The Venture (D. C.) 26 Fed. 285. There was no agreement whatever with the owner, unless the Insurance Company can be deemed to have been the agent of the owner under the provision of the insurance policy, above quoted.

It can scarcely be said that by virtue of such provision, the Insurance Company was clothed with the power to impose a lien upon the

vessel under the circumstances disclosed by the testimony, which rather shows that the libellant intended to rely upon the credit of the Insurance Company, with which it had been dealing for many years. It seems that before the libellant could rely upon such pledge, even supposing it was intended to be made, some inquiry should have been made of the owner, who could easily have been reached, and then it would have quickly learned that the Insurance Company was the underwriter only and had no authority apart from such as was incident to that relation, which apparently did not go to the extent of enabling it to pledge a vessel it was under obligation to save for the owner upon pain of indemnifying her for any loss that should arise from lack of care. Here there was no necessity for credit and it satisfactorily appears that no credit except that of the Insurance Company was in contemplation. No allusion having been made to the credit of the vessel, it follows that the credit of the Insurance Company was solely in view when the contract for raising was made. The Wandrahm (D. C.) 62 Fed. 935, affirmed 67 Fed. 358, 14 C. C. A. 414. It was there said (page 360 of 67 Fed., page 416 of 14 C. C. A.):

"When a person, whose relation to the vessel is unknown, but who is not the apparent agent of the owners, who are unknown, but who can readily be ascertained, makes a contract for something to be done upon the vessel, in the line of his known business as a mechanic, the co-contracting party is put upon inquiry to ascertain the powers which the stranger possesses. If no such inquiry is made, and nothing is said about the credit of the vessel, the inference is that the material man was satisfied with the security of the sole debtor, and the mere subsequent declaration of the libellant that he furnished the materials upon the credit of the vessel will not vary the conclusion which is to be drawn from his conduct when the contract was made."

Even if the libellant had a basis for a lien, the delay on its part, in enforcing it, has been such as to destroy it. The policy provided:

"It is furthermore hereby expressly provided, that no suit or action against this company, for the recovery of any claim for loss or damage upon, under, or by virtue of this Policy, shall be sustained in any Court of Law or Equity, unless such suit or action shall be commenced within the term of twelve months next after the loss or damage shall occur; and in case any such suit or action shall be commenced after the expiration of twelve months next after such loss or damage shall have occurred, the lapse of time shall be taken and deemed as conclusive evidence and a conclusive defense against the validity of the claim thereby so attempted to be enforced"

No proceedings were taken by the libellant to enforce a lien until the libel was filed herein on the 31st day of July, 1903. A claim was made against her by the Insurance Company on the 29th of July, 1902, but it was immediately returned with the statement that she had nothing to do with it. On the 11th of September, 1902, the libellant sent a bill to the claimant's agent and he returned it and replied that the scow was insured in the Greenwich Company, which made the contract, and the libellant must look to that company for payment. It sent some dunning letters to her but did nothing further until the libel was filed, more than 12 months after the accident. In the meantime the claim against the underwriter was jeopardized if not lost under the clause above quoted. If, therefore, a recovery

should be allowed here, the insured would, by reason of the libellant's delay, be without a clear recourse against the underwriter. The laches on the part of the libellant would thus enable it to make the owner pay and permit the underwriter to escape, notwithstanding a recognition of liability by its conduct and an actual contract made with the libellant, without the claimant's sanction. The libellant should not be permitted to recover here.

The libel is dismissed.