## THE HEATHGLEN.

(District Court, D. New Jersey. March 4, 1907.)

MARITIME LIENS—PAINTING VESSEL IN FOREIGN PORT—CONTRACT.

A libelant *held* not entitled to a maritime lien for the painting of a British vessel in the port of New York, where the work was not ordered by the master, but by a firm in Glasgow, Scotland, with whom libelant had previously had business dealings, and was done, as the evidence tended to show, upon their credit, and not upon that of the vessel.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, § 48.]

In Admiralty.

Wray & Callaghan, for libelant.

Convers & Kirlin, for claimant.

CROSS, District Judge. The libel filed herein is for materials furnished and work and labor performed in painting the steamship

Heathglen, a British vessel, while in the port of New York in the month of February, 1905. The vessel arrived in that port the latter part of January or early in February of that year, and her bottom was painted while she was in the dry dock at Erie Basin. The libelant's claim amounts to $502, besides interest. There is no serious dispute over the amount of the bill. The libelant undoubtedly painted the ship and supplied a portion of the necessary materials at or about the time mentioned. The chief defense set up is that the work was not ordered by the captain, but by a firm in Glasgow, known as Dick & Parker, to whom, rather than to the vessel, libelant gave credit. It may be said at the outset that the testimony of the libelant, which is uncorroborated for the most part, was so evasive and contradictory that little reliance can be placed upon it; but, were it otherwise, I think it is clearly established by the weight of the evidence that the work was performed by him for and at the request and upon the credit of the above-mentioned firm. He admits that he received a communication from them prior to the time of the arrival of the Heathglen in New York. Mr. Parker, of the firm of Dick & Parker, testifies that while they had no written contract with Dean Foster & Co., who were the general agents at London, of the owners of the vessel, it was nevertheless understood between them that, if the Heathglen docked at New York, that firm was to supply paint with which to paint her, and get some one to apply it, and adds that they had a general understanding with Michelson, founded upon their previous course of business with him, that, if they supplied him with the paint, he would see that it was applied; and it elsewhere appears in the case that a portion of the paint he applied came from that firm. That libelant did not perform the work pursuant to any instructions of the master of the vessel is manifested by a letter which he admits he wrote to the captain of the Heathglen while she was lying in Boston prior to her arrival at New York. This letter is dated January 16, 1905, and in it the libelant says:

"I am to paint the bottom of the S. S. Heathglen when she comes to N. Y., and no doubt you have received instructions to this effect from your owners. Please keep me posted when you are about to leave Boston, so as I can be on hand to paint the steamer."

This letter, as above stated, was written before the steamship had reached New York, and before the writer had had any interview with her captain. Coming, now, to the time when the vessel lay in dry dock at New York, Michelson's account of what transpired between him and the captain is as follows: The captain said, "I want you to give me a good job on that ship," to which Michelson replied, "I will," which was quite consistent with the fact that he had already been employed to do the work. He further says that the work was supervised by the first and second officers of the vessel, and that it was satisfactory. The captain explicitly denies that he employed libelant to do the work, and furthermore says that the libelant admitted that he represented Dick & Parker, and that they had instructed him to do the work. That Michelson understood that he was working for Dick & Parker, and that the work was done upon their credit, is also manifested by

his subsequent conduct. A bill for the work made out by him upon his printed billhead February 3, 1905 (the very day the work was completed), reads thus: "Messrs. Dick & Parker, Glasgow, Dr.," to which, but below, and with double-ruled lines intervening, was added the following: "S. S. Heathglen." Then follow the various charges. Not only was this bill made out to the Glasgow firm, but Michelson admits that subsequently, and probably within two or three weeks from the date of the bill, he drew a draft for the amount of it upon that firm, and deposited the same for collection with his New York bank, which draft, however, was not honored. It is claimed on the part of the libelant that the above bill, properly interpreted, was against the Heathglen, but I cannot yield to that contention. The bill was made to Dick & Parker, and the addition below of the name of the steamship was descriptive of or intended to identify the work; but, had the bill been made unquestionably to the vessel, that fact would not be controlling.

The question would still remain: How and by whom was the work ordered, and to whom was credit actually extended? Michelson appears to have thought that Dick & Parker were part owners of the steamship. He says that they told him so, and this may account for his conduct in accepting their order and making the charge to them, or he may have relied upon his previous course of dealing with them, concerning which a member of that firm testified. But, if Michelson thought he was dealing with the owners, he would not be entitled to a lien without a mutual understanding to that effect. When repairs are made by order of the owners of a vessel in a foreign port, the presumption is against the right to a maritime lien, and the burden of proof is on the libelant to show the contrary. Judge Dallas, speaking for the Circuit Court of Appeals, in The Havana, 92 Fed. 1007, 35 C. C. A. 148, says:

"Where repairs are ordered by an owner even in a foreign port, a lien for their cost is not presumed to have been contemplated, and cannot be created by any act of the party doing the work which he may claim to be indicative of a design on his part to look to the vessel for his compensation, unless it also appears that the other party had so understood that act, and had at least impliedly assented to its purpose."

To the same effect is the opinion of the same judge in the same court, in The Now Then, 55 Fed. 523, 5 C. C. A. 206. See, also, The Wandrahm, 67 Fed. 358, 14 C. C. A. 414.

Under the facts as I find them, the libelant has no right to a lien upon the vessel. The work was not ordered by the master, and was not performed upon the credit of the vessel, but upon that of the Glasgow contractors.

The libel will be dismissed, with costs.