## THE CONVOY.

(District Court, E. D. New York. April 25, 1919.)

1. SALVAGE ☞39—RAISING SUNKEN VESSELS.

   A maritime lien arises from a salvage service requiring the raising of a sunken vessel or its cargo outside of the vessel's home port, but a lien for salvage does not accrue where the vessel is sunk at her home port under such circumstances that no unusual effort or danger is used in raising to the surface and delivering to the owner or to a place of safety.

2. SALVAGE ☞39—RAISING MATERIAL FROM WATER.

   A maritime lien does not arise from procuring or furnishing material in the building of a boat, by raising such material from under the surface of the water, which is not salvage, and not work on the vessel, until the new boat is complete.

3. SALVAGE ☞39—SERVICES IN HOME PORT.

   A maritime lien for salvage will lie for a boat in her home port, when the nature of the services renders the saving of the vessel or cargo a recognized salvage service.

4. SALVAGE ☞39—CONTRACT.

   If a contract is made to perform definite services at a definite price or rate of compensation, even work which would be worthy of the name of salvage does not furnish the basis for a maritime lien.

5. MARITIME LIENS ☞20—REPAIRS IN RAISING TUG—"REPAIRS"—"NECESSARIES."

   A libel, alleging a charge for repairs as the initial step of raising a sunken steam tug in her own port, stated a cause of action within Act June 23, 1910 (Comp. St. §§ 7783–7787), authorizing a maritime lien for "repairs" and "necessaries."

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessaries; Repairs.]

6. ADMIRALTY ☞71—LIBEL—INDEFINITENESS.

   If libel for repairs against a steam tug is so indefinite that claimant is in doubt and has not information in its own possession enabling it to answer, further exceptions should be taken, or the point raised by answer, and an interrogatory as to libelant's contract for repairs on the tug presented therewith.

In Admiralty. Libel by the Interstate Lighterage & Transportation Company against the steam tug Convoy. On exception to the libel. Exception overruled, and claimant directed to answer.

Macklin, Brown, Purdy & Van Wyck, of New York City, for libelant.

Alexander & Ash, of New York City, for claimant.

CHATFIELD, District Judge. The claimant has excepted to the libel upon the ground that a lien does not accrue, and that an action in rem may not be had, upon a claim for "work, labor, and services

performed at the special instance and request of the owner," when set forth as in this libel.

The libel alleges that in the month of January, 1918, the libelant, at the special instance and request of the owners of said steam tug, performed certain work, labor, and services in raising said steam tug Convoy at the foot of Eighteenth street, Hoboken, N. J., where said tug was lying in a sunken and damaged condition. These services are alleged to be of the reasonable value of $1,118. They are alleged to have been necessary to put the tug in a seaworthy condition, and evidently include repairs; but the extent of these repairs cannot be ascertained from the libel. The raising occurred and the services were rendered, so far as the libel indicates, within the harbor of New York, the home port of the tug. This is a matter of inference only from the libel, but was assumed upon the argument, and there is evidently no intention of claiming that the tug was not in her home port during all of the proceedings.

[1] A maritime lien arises from a salvage service, which requires the raising of a sunken vessel or its cargo outside of the vessel's home port. But a lien for salvage does not accrue where a vessel is sunk at her home port, under such circumstances that no danger or unusual effort is involved in raising the vessel to the surface and in delivering her either to the owner or to a place of safety. The Paul L. Bleakley (D. C.) 146 Fed. 572; The D. S. Newcomb (D. C.) 12 Fed. 735; The Venture (D. C.) 26 Fed. 285; Merritt & Chapman D. & W. Co. v. Morris & Cumings Dredging Co., 137 Fed. 780, 70 C. C. A. 356; The Dredge A (D. C.) 217 Fed. 617.

[2] Similarly, a maritime lien does not arise for procuring and furnishing material in the building of a boat, by raising that material from under the surface of the water. This is not salvage, and not work upon a vessel, until the new boat is complete. The Dredge A, supra.

[3, 4] A maritime lien for salvage will lie, even for a boat in her home port, when the nature of the services renders the saving of the vessel or cargo a salvage service, as recognized by admiralty law. The Camanche, 75 U. S. (8 Wall.) 448, 19 L. Ed. 397. But if a contract is made to perform definite services at a definite price or rate of compensation, even work which would be worthy of the name of salvage does not furnish the basis for a maritime lien. The Camanche, supra.

[5] State statutes are applied with precision, and in such instances as The D. S. Newcomb, supra, and The Venture, supra, the statute of Pennsylvania was held not to have enlarged the services for which a maritime lien could be had, so as to include the raising of a vessel, either as a part of a towing contract, or as a part of the supplies recognized as "necessaries." Thus the distinction between services in a home port and services elsewhere has entered into most of the decisions prior to the passage of the United States statute of June 23, 1910. 36 Stat. at Large, 604, c. 373 (Comp. St. §§ 7783–7787).

This statute has been held in The Oceana, 244 Fed. 80, 156 C. C. A. 508, and The Hatteras, 255 Fed. 518, —— C. C. A. ——, to wipe out

the distinctions based on the home port of the vessel; but it includes no *new* services as a foundation for a maritime lien, except those which are specifically enumerated, citing The J. Doherty (D. C.) 207 Fed. 999. In The Oceana, supra, at the bottom of page 82 of 244 Fed. (156 C. C. A. 508), the court states in detail the effect of the new statute, while in The Hatteras, supra, at page 520 of 255 Fed. (—— C. C. A. ——), the court holds that a presumption of lien created under general maritime law may be rebutted by showing personal contract, under such circumstances as to exclude liability of the vessel.

Under these decisions it is evident that a maritime lien may arise in a home port from furnishing either "repairs" or "necessaries." If a vessel is placed on a dry dock or pumped out in order to raise her sufficiently for the making of repairs, a lien will arise for the entire bill, just as a lien for the actual work of repair is created. If, therefore, a vessel is lying on the bottom, and as a part of repairing a hole in the vessel she has to be raised, there seems to be no logical reason why it should not be treated as a part of the work from which a lien would arise. The essential element would seem to be that the vessel was to be repaired—that is, to be restored—and that she had not been abandoned or treated as material for the building of another vessel. On the other hand, if the sunken vessel had been treated as a total loss, and yet is saved, the fact that she might be restored to service by having certain repairs made would not take the work out of the class of salvage.

In the case at bar the allegations of the libel show that the case is not one of salvage; the vessel was not, apparently, given up as a total loss, and hence the fact that the services were rendered in the home port does not affect the question which is presented, viz., whether the work of raising the vessel was either "necessary" or a part of the repairs. Certainly nothing could be more necessary, in the ordinary sense, than the raising of the vessel; but the word "necessaries" in the statute has been limited to such things as go to the actual equipment of the vessel as a navigating object. The statute expressly includes the use of a dry dock and marine railway; but mere services involving the consumption of power or fuel, such as towing, have been held not to be a "necessary," in the sense meant by the statute.

The decision in The D. S. Newcomb, supra, seems to point out the distinction. If the raising of the vessel is merely a part of towing her to some other place, even though it is a necessary step in that removal, it is not one of the acts specified by the statute; but if the raising of the vessel is merely like hauling her on the dry dock, or pumping the water out to get at the place of making repairs, then it would seem to be a part of the "repairs" or "necessaries" for which a lien is given in a home port under the statute in question.

[6] In the case at bar, the libel apparently alleges a charge for repairs with the initial step of raising the sunken vessel. But this could be put in issue, or if the libel is so indefinite that the claimant is in doubt and has not information in its own possession which will enable it to answer, further exceptions should be taken, or the point should

be raised by answer and an interrogatory as to the contract for repairs presented therewith.

The exception to the libel should therefore be overruled, and the claimant directed to answer.