## THE HELEN BROWN.[1]

*(District Court, D. Massachusetts. June 23, 1886.)*

MARITIME LIEN—LIENS FOR REPAIRS—STATE STATUTES—PUB. ST. MASS. CH. 192, § 14 SEC. 15.

To "depart from port" means to go to sea, irrespective of the distance or duration of the voyage, under Pub. St. Mass. c. 192, §§ 14, 15.

The libelants claimed a lien under Pub. St. Mass. c. 192, §§ 14, 15. The claimants, the mortgagees, defended on the ground that the provisions of the act had not been complied with. It was admitted that no claim had been filed until more than four days after a trip to Lynn; but it was asserted that a trip to Lynn and return, completed on the same day, was not a departure from the port, within the meaning of the act.

*Horace G. Allen,* for libelants.

*C. T. Russell, Jr.,* for claimants.

NELSON, J. This is a libel by material-men to enforce a lien for labor and materials furnished in repairing the steam-tug Helen Brown, at Boston, her home port. The lien is claimed under a statute of the state which gives a lien for labor performed and materials furnished in the repairs of a domestic vessel. Pub. St. c. 192, § 14. Section 15 provides that "such lien shall be dissolved unless the person claiming the same files, within four days from the time when the vessel departs from the port at which she was when the debt was contracted, in the office of the clerk of the city or town within which the vessel was at such time," a statement giving a just and true account of the demand claimed to be due to him. The Helen Brown was an ordinary tug-boat, engaged in the usual business of boats of her class. After the libelants' debt was contracted, she towed a vessel from Boston to Lynn, and on several other occasions she went to Lynn, and was there engaged in towing vessels; but in each instance she returned to Boston the same day after the service was rendered. It was admitted that no statement of the libelants' demand was filed, as required by section 15, until more than four days after the last of her

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

trips to Lynn; and if going to Lynn was a departure from the port at which she was when the debt was contracted, within the meaning of section 15, the libelants' original lien was dissolved as against the claimants, who were mortgagees of the vessel. The case turns on the meaning of the words "depart from the port," as used in that section. A vessel departs from her port when she goes to sea. When she leaves her harbor, and enters upon the high seas, whether on a voyage to another port, or in the prosecution of some business on the ocean, such as towing, fishing, rendering assistance, or the like, she is, in a legal as well as in a nautical sense, at sea, as distinguished from being in port. To "depart from port," to "leave port," to "go to sea," are phrases which, in popular speech, have the same signification. I am of opinion that it is in this sense that the words "depart from the port" are used in this statute. *U. S.* v. *Grush,* 5 Mason, 290; *The Harriet,* 1 Story, 251. In going to Lynn the Helen Brown went outside of the headlands and lighthouses which mark the outward geographical limits of Boston harbor, and entered Massachusetts bay. She was then upon the high seas; she had left her port and had gone to sea. Whether her departure was for a longer or shorter voyage, or with the intention of returning sooner or later, can make no difference. She went, not secretly, or for the purpose of avoiding the lien, but openly, and in the line of her regular employment.

Reference was made to chapter 70, § 7, Pub. St., which, for pilotage purposes, defined the harbor of Boston to include all the waters within Nahant rock, on the north, and Point Alderton, on the south, Lynn being within those limits. But it is apparent that this is an arbitrary line, established for pilotage purposes only, and can have no application in cases arising under chapter 192.

Libel dismissed, with costs.