## THE J. S. WARDEN. THE ORIENT. THE MT. DESERT.

(District Court, S. D. New York. January 29, 1910.)

1. SEAMEN (§ 2*)—WHO ARE SEAMEN—BARTENDER ON VESSEL—LIEN FOR WAGES.
    One employed on a steamer as bartender, when such service is in furtherance of the purpose of her voyage, is entitled to a maritime lien for his wages.
    [Ed. Note.—For other cases, see Seamen, Cent. Dig. § 2; Dec. Dig. § 2.*]

2. SEAMEN (§ 27*)—LIEN FOR WAGES—WHO ARE SEAMEN.
    One who renders services on a vessel in her home port is not entitled to a lien for his wages, unless the services were of a maritime character, such as would be rendered by a seaman.
    [Ed. Note.—For other cases, see Seamen, Cent. Dig. § 4; Dec. Dig. § 27.*]

3. SEAMEN (§ 16*)—RIGHT TO WAGES—SHIP IN CUSTODY OF MARSHAL.
    Wages of seamen employed on a vessel continue while she is in the custody of a marshal, if they remain ready and willing for service.
    [Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 56–65; Dec. Dig. § 16.*]

In Admiralty. Suits By Michael McGrath against the steamboats J. S. Warden, Orient, and Mt. Desert, respectively. Decrees for libelant.

Hyland & Zabriskie, for libelant.
Wing, Putnam & Burlingham, for claimant.

HAND, District Judge. I think the libelant is entitled to a maritime lien for his services as bartender. There could, of course, have been no doubt under the early decisions that admiralty would not have taken jurisdiction over such a claim, for by a great number of authorities the lien was limited to services which were in aid of the navigation of the ship or the preservation of the ship. In 1815 Lord Stowell refused to allow the lien even of a surgeon. The Lord Hobart, 2 Dodson, 100. Judge Peters in The New Jersey, Fed. Cas. No. 5,233, made the same ruling in 1806; and more recent cases are not infrequent to the effect that the lien is limited to services in aid of the navigation of the ship. Trainor v. Boat Superior, Gilp. 514, Fed. Cas. No. 14,136;

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Gurney v. Crockett, Fed. Cas. No. 5,874; The W. F. Brown (D. C.) 46 Fed. 290.

While the cases to the contrary are few in number, there is some unquestioned authority for the proposition that, wherever the services are in aid of the purposes of the voyage, a lien arises, even though they are for the navigation of the ship or its preservation. The Ocean Spray, 4 Sawy. 105, Fed. Cas. No. 10,412; The Minna (D. C.) 11 Fed. 759. In the last case Mr. Justice Brown, then District Judge, said:

"All hands employed upon the vessel, except the master, are entitled to a lien if their services are in furtherance of the main objects of the enterprise in which she is engaged."

No doubt the learned justice would have modified this by the assumption that the services were rendered upon the ship. See, also, The Sultana, 1 Brown's Adm. 13, Fed. Cas. No. 13,602, which seems, however, to disagree with The Emma, Fed. Cas. No. 18,218. There is a dictum of the Circuit Court of Appeals, likewise, in Saylor v. Taylor, 77 Fed. 476, 23 C. C. A. 343, to the same effect. The earlier restriction of the rule reflects the contemporaneous conflict of jurisdiction between the courts of common law and the courts of admiralty, a conflict the significance of which has long since disappeared.

Section 4612 of the Revised Statutes (U. S. Comp. St. 1901, p. 3120), while not controlling, is an indication of the breadth of meaning which Congress, at least, means to put upon the word "seamen," and if the statute did in terms apply, there could be no question of its including the services of the libelant in this case.

As I can see in principle no reason why there should be an artificial limitation of rights to those engaged in the navigation of the ship, to the exclusion of others who equally further the purposes of her voyage, and as there is at least some competent authority for the broader construction of the rule, I shall decide that the libelant has a lien for his wages as bartender, and direct a reference to compute the damages.

In the case of The J. S. Warden. for the year 1908, I cannot allow the libelant anything for the period before the ship went into commission, which was on July 4th, unless the master says that his services were of a maritime character. The Hattie Thomas (D. C.) 59 Fed. 297. The master will also decide whether between September 1 and 25, 1909, the libelant was in fact the ship's master, though he went by the name of purser. It is not a defense that between the 12th and the 24th of September the ship was in the custody of the marshal. The Alanson Sumner. (D. C.) 28 Fed. 670. In the case cited Judge Coxe ruled that when a ship was in the sheriff's custody wages continued, if the seamen remained ready and willing. I can see no distinction because here the ship was in the marshal's custody.

In regard to The Mt. Desert I decide that the libelant was not kept there out of charity. Why he should have been employed is not clear, but the ship's time-book satisfies me that he was in fact regarded as employed. The master will compute the time and rate in accordance with the showing of the book. The master will also determine the character of the services during the days when the ship did not make

excursions. While it may, perhaps, be unlikely that the libelant's services were not in furtherance of the purposes of the ship, it is possible that they were of a purely nonmaritime character; at least, the claimant should be allowed to go into that issue.

In regard to The Orient, between May 27th and June 26th, the master will also determine the character of the services during the days when the ship was not on excursions, as in the case of The Mt. Desert,

Prepare a decree to compute damages.