## THE SATELLITE.

### (District Court, D. Massachusetts. April 20, 1910.)

### No. 248.

**1.** MARITIME LIENS (§ 25*)—MASSACHUSETTS STATUTE—SUPPLIES—"OTHER AR-
TICLES."

In Rev. Laws Mass. c. 198, § 14, which gives a lien on a vessel for
money due for "provisions, stores, or other articles furnished for or on
account of such vessel" by virtue of a contract, express or implied, with
the owner, the words "other articles" include only such articles in the
nature of provisions and stores as might be necessaries for the vessel in
the sense of the maritime law.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 20–36;
Dec. Dig. § 25.*

For other definitions, see Words and Phrases, vol. 6, pp. 5070–5102;
vol. 8, pp. 7741–7743.

Maritime liens created by state laws, see note to The Electron, 21 C.
C. A. 21.]

**2.** MARITIME LIENS (§ 25*)—MASSACHUSETTS STATUTE—NECESSARY SUPPLIES—
LIQUORS—"OTHER ARTICLES."

Liquors supplied to a vessel engaged in making daily fishing excur-
sions from Boston to sea, of about 8 hours' duration, during the summer
months, to be dispensed by the owners to passengers ordering the same,
are in aid of the business in which the vessel is employed, and may fairly
be deemed necessaries and within Rev. Laws Mass. c. 198, § 14, giving a
lien for provisions, stores, and other articles supplied to a vessel under
contract with the owner.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. §§ 20–36;
Dec. Dig. § 25.*]

**3.** MARITIME LIENS (§ 32*) — MASSACHUSETTS STATUTE — TIME FOR FILING
STATEMENT—"DEPART FROM PORT."

Under Rev. Laws Mass. c. 198, § 15, which provides that the lien on a
vessel for supplies, etc., given by the preceding section, shall be dissolved
unless a statement of the demand is filed for record within 30 days after
the vessel "departs from the port at which she was when the debt was
contracted," a vessel which made daily fishing trips from the port of
Boston to sea, beyond the limits of the port and the state, on each of
such trips "departed from the port" within the meaning of the statute,
although she did not touch at any other port, and the lien for any item
of debt contracted for supplies was dissolved in 30 days after the next
trip made, notwithstanding the fact that a running account was kept for
such supplies which was not closed until after she had made her last
trip for the season.

[Ed. Note.—For other cases, see Maritime Liens, Dec. Dig. § 32.*

For other definitions, see Words and Phrases, vol. 2, pp. 1988, 1989.]

In Admiralty. Suit by Francis M. Doyle against the steamer Satel-
lite. Decree for respondent.

George L. Dillaway, for libelant.
Russell, Moore & Russell, for claimant.

DODGE, District Judge. This libel was filed December 6, 1909.
The libelant, who is a liquor dealer in Boston, claims $1,262.49 as the
balance of an account for ale, beer, whisky, and bottled drinks called
tonics, furnished by him to the steamer at Boston, on various dates

in April, May, June, July, August, September, and October, 1909. The earliest date of any of the deliveries is April 17th, and the latest date is October 30, 1909.

The evidence shows that the Satellite was employed by her owner, during the season of 1909, in making daily fishing excursions out of the port of Boston. On these trips she was accustomed to leave Boston at 10 a. m., go out to various fishing grounds some miles from land, and get back to her wharf in Boston at about 6 p. m. On none of these trips did the steamer put into any other place than Boston, nor was there at any time any intention that she should do so. The fishing grounds visited were off Marblehead or off Scituate. They were in every case more than one marine league from the shore of Massachusetts and were outside the territorial limits of the commonwealth as defined by Revised Laws Mass. c. 1, § 3. Tickets for the trip were sold to the persons carried, which also entitled the holders to the use of fishing tackle and bait and to a chowder, all provided by the steamer. An extra charge was made for drinks ordered, which were supplied by the steamer as ordered by the persons carried. The evidence showed that the steamer had carried on the same business during the corresponding months in years previous to 1909; that its supplies of ale, beer, and other liquors had been ordered during those seasons from the libelant; and that there had been a running account with him continuing through each previous season, as in 1909, the credit items being partly cash on account and partly empty bottles or cases returned, and the final balance of the account being settled, in former years, after the boat stopped running at about the end of October. The items of the account now sued on are not disputed, and there is no dispute that the articles were delivered to the vessel by the libelant, or that the balance claimed is due as between the libelant and the owner of the vessel, who knew and approved of what was done.

The Satellite belonged to a citizen of Massachusetts, was registered at Boston, and Boston was her home port. The alleged lien is claimed under Revised Laws Mass. c. 198, § 14. This section provides as follows:

"If by virtue of a contract, express or implied, with the owner of a vessel * * * money is due for * * * provisions, stores, or other articles furnished for or on account of such vessel in this commonwealth, the person to whom such money is due shall have a lien on the vessel, her tackle, apparel and furniture to secure the payment of such debt, and such lien shall be preferred to all others, except that for mariners' wages, and shall continue until the debt is satisfied."

The claimant contends that these provisions give no lien for liquors furnished to a vessel under circumstances as above.

[1] The libelant could acquire no lien according to the general maritime law for supplies of any kind furnished, as these were, at the vessel's home port, and by authority of the owner there residing. His claim must rest wholly upon the state statute. If his contract with the owner of the vessel was maritime in its nature, "the case in admiralty becomes complete if only the conditions of the statute are all complied with, and whether or not these conditions conform in all

details to the general rules of the maritime law." The Iris, 100 Fed. 104, 113, 40 C. C. A. 301, 310.

A contract is not necessarily maritime in its nature because it has relation to a vessel, nor because it is a contract for articles to be used on board a vessel. Regard must be had to the character of the articles contracted for. If they were such as can be called necessaries for the vessel, the contract is maritime. Looking only at the language of the state statute here in question, a contract for supplies does not meet all its conditions unless the supplies contracted for are within the description "provisions, stores, or other articles." "Other articles" here means articles of the same kind with provisions and stores, and the words quoted are intended, in my opinion, to include only such articles in the nature of provisions and stores as might be necessaries for the vessel in the sense of the maritime law. The question is whether the articles furnished by this libelant can be said to fall within that description.

[2] It has been said that necessaries include whatever would have been ordered by a prudent owner if present; but, under the circumstances of this case, the application of such a test is not of much assistance. On the question whether liquors to be dispensed to passengers on a vessel may be regarded as necessaries, there are conflicting decisions. In The Long Branch, 9 Ben. 89, Fed. Cas. No. 8,484, supplies furnished for a restaurant maintained on board a steamboat running from New York to Sandy Hook included liquors to be dispensed from a bar which formed part of the restaurant. It was held that the restaurant and bar were no more than a convenient method of supplying the ordinary wants of the class of passengers transported, and the court declined to make any distinction between the liquors and the other supplies furnished. In The Mayflower (D. C.) 39 Fed. 41, a lien was maintained, under provisions of a Pennsylvania statute substantially like those here in question, for liquors furnished to be dispensed to passengers on an excursion boat, plying in the vicinity of Pittsburgh.

On the other hand, in The Shrewsbury (D. C.) 69 Fed. 1017, it was held that there was no lien, under similar provisions of an Ohio statute, for liquors furnished to be dispensed at a lunch counter and bar maintained on board a steamer carrying passengers on Lake Erie. It is true that the lunch counter and bar in that case appeared to have been managed, not by the owners themselves, but by other persons under a contract with the owners; but the decision seems to have been that such supplies were not of the kind contemplated by the Ohio Legislature as entitled to the protection of a lien on the boat. And in The Robert Dollar (D. C.) 115 Fed. 218, where the question was whether a lien existed under the general maritime law, it was held that there was no lien for liquors furnished for a bar maintained by the owners on a vessel making voyages to Alaska. The court said:

"It is always optional with the owner of a vessel whether to conduct a bar or not, and as it is not essential to the navigation of the vessel, or to the safety and comfort of the passengers, I cannot regard bar supplies as necessaries in the sense in which that word is used in the twelfth admiralty rule."

There is no doubt that in determining what supplies are necessaries regard must be had to the character of the voyages or the employment in which the vessel is being used, nor that a more inclusive construction of the term has had to be adopted, as the uses to which vessels are put and the purposes for which they are employed have come to be more various in character. If she is employed in carrying passengers, part of the profits from her employment is, of course, obtained by supplying passengers' wants during the voyage. The longer the voyage and the more passengers carried, the greater will be the variety in kind of the articles which must be furnished to her for this purpose. The decision in The Plymouth Rock, 13 Blatchf. 505, Fed. Cas. No. 11,237, that supplies for use in the restaurant on board a passenger steamer were necessaries, has never been, nor do I see how it could be, questioned. At least in cases like The Long Branch, above cited, where the voyages made were only of a few hours duration, it might be possible to say that it is optional with the owner whether to maintain a restaurant on board or not; but the probability that, if he did not, he would get fewer passengers to carry, seems to me to meet this objection. If passengers are carried, whatever may be reasonably supposed to meet the ordinary wants of the class of passengers expected must, I think, be necessaries, whether strictly essential to their safety and comfort or not. Judged by this test, I think the liquors furnished by the libelant may fairly be called necessaries. The J. S. Warden (D. C.) 175 Fed. 314, a recent decision by Judge Hand in the New York Southern district, tends to confirm this conclusion. It was there held that the services of a bartender rendered on board a passenger-carrying vessel are maritime and secured by a lien on the vessel, because they are in aid of the purposes of the voyage, notwithstanding the earlier decisions that the only services on board which confer a lien are such as aid in the navigation or preservation of the ship. I hold, therefore, that the libelant acquired a lien under the state statute.

[3] Such a lien is dissolved under the provisions of the statute unless a statement of the demand is filed for record within 30 days after the vessel departs from the port at which she was when the debt was contracted. Rev. Laws Mass. c. 198, § 15. The last of the daily trips made before the libel was filed was on October 31, 1909, and the last supplies furnished to her by the libelant were furnished October 30, 1909, as has been stated. No statement of the demand was filed for record until December 7, 1909. Between November 1st and December 7th the vessel had not departed from Boston. The respondent contends that she had departed from the port of Boston on each of her daily trips, and that, if the libelant ever had a lien for what he furnished, he has now lost it because no statement was filed within the required time. The libelant's contention is that there was no departure from the port of Boston on the daily trips, and that, even if there had been, the fact that there was a running account with the vessel made it unnecessary to file the required statement until 30 days had elapsed after the departure of the vessel from the port next following the close of the account. The account was closed, according

to him, on November 1st, on which date there were items credited. In view of The Helen Brown (D. C.) 28 Fed. 111, and The William E. Cleary (D. C.) 114 Fed. 756, both of them .decisions in this court, I am obliged to hold that each of the daily trips made by this vessel was a departure from the port of Boston. It is true that the vessel went into no other port while absent from Boston; but there can be no question that her trips took her in each instance beyond the limits of the port of Boston and upon what are called the high seas. The decisions referred to are each put upon the ground that the vessel had been outside the limits of the port, not upon the ground that she had been into some other port. When beyond the outward geographical limits of Boston. Harbor and in Massachusetts Bay, as was said by Judge Nelson in The Helen Brown, the vessel "was then upon the high seas; she had left her port and had gone to sea. Whether her departure was for a longer or shorter voyage, or with the intention of returning sooner or later, can make no difference."

The fact that there was a running account might be important if the statutory limitation of the time, within which the statement must be filed for record, referred to the time when the cause of action accrued. It refers, however, to the time when the debt was contracted, and I do not see how it can be said that the debt was not.contracted until the account was closed. It seems to me that a separate debt was contracted upon each occasion when articles were furnished to the vessel. Elmore v. The Alida, Fed. Cas. No. 4,419; Spencer v. The Alida, Fed. Cas. No. 13,231; The Goldenrod, 153 Fed. 171, 82 C. C. A. 345. If so, the lien for them was dissolved 30 days after the daily trip next following, in the absence of a statement filed for record within that time.

I am obliged to hold that the libelant's lien for what he furnished had been dissolved before his libel was filed, and the libel is therefore to be dismissed.