## THE OCEANA.

(Circuit Court of Appeals, Second Circuit. May 25, 1917.)

No. 261.

1. MARITIME LIENS ☞21—CONTRACT FOR CONDITIONAL SALE OF VESSEL—COVENANT AGAINST LIENS.

A contract for the sale ·of a vessel provided that until fully paid for the purchaser should keep it clear of liens, "and if any lien or libel is filed or asserted the same shall be immediately bonded by the purchaser." *Held*, that the provision for bonding was not a permission to create liens, but one added out of abundant caution.

2. MARITIME LIENS ☞21—LIENS FOR REPAIRS AND SUPPLIES—FEDERAL STATUTE.

Under Act June 23, 1910, c. 373, 36 Stat. 604 (Comp. St. 1916, §§ 7783–7787), which gives a lien for repairs, supplies, and other necessaries furnished to a vessel on order of the owner or certain others, including any person intrusted with the management of the vessel in the port of supply, subject to the exception that no lien shall be conferred where "the furnisher knew or by the exercise of reasonable diligence could have ascertained" that the person ordering was without authority to bind the vessel therefor, one furnishing repairs on supplies on the order of persons intrusted with the management of the vessel is under no duty to search the records to ascertain the ownership of the vessel or the authority of such person.

3. MARITIME LIENS ☞21—LIENS FOR REPAIRS AND SUPPLIES—PURCHASES BY PERSONS INTRUSTED WITH MANAGEMENT OF VESSEL.

The owner of a steamship made a contract for her conditional sale, providing that the purchaser should create no liens thereon until final payment. While the vessel was still in the seller's yard, and before formal delivery, agents of the purchaser were allowed to take actual charge, and to order repairs and supplies to fit her for service, and after her actual delivery and removal other repairs and supplies were procured, but not paid for, also with the knowledge of the seller, which afterwards retook possession for breach of the contract. *Held*, that all persons so furnishing repairs and supplies, whether before or after formal delivery of the vessel, without knowledge or notice of the contract of sale, were entitled to liens therefor.

Appeal from the District Court of the United States for the Eastern District of New York.

Consolidated suits in admiralty to enforce maritime liens against the steamship Oceana; the Morse Dry Dock & Repair Company, claimant. Decree for certain of the libelants, and claimant and the Kniffin & Demarest Company appeal. Modified and affirmed.

For opinion below, see 233 Fed. 139.

Macklin, Brown & Purdy, of New York City (Pierre M. Brown, of New York City, of counsel), for appellant claimant.

Ralph James M. Bullowa, of New York City, for appellant Kniffin & Demarest Co.

Robinson Leech, of New York City, for appellees Maryland Coal & Coke Co. and W. & A. Fletcher Co.

Burlingham, Montgomery & Beecher, of New York City (E. Curtis Rouse, of New York City, of counsel), for appellees Samuel E. Hunter and others.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

James W. Prendergast, of New York City, for appellees F. W. Devoe and C. T. Reynolds Co.

Russell T. Mount, of New York City, for John Wanamaker.

Alexander & Ash, of New York City, for appellees Burns Bros., Frank W. McKee, and Mutual Steam Laundry Co.

Julius Offenbach, of New York City, for appellees A. Silz, Inc., and others.

House, Grossman & Vorhaus, of New York City (Moses H. Grossman and Charles Goldzier, both of New York City, of counsel), for appellee J. & J. Eager & Co.

Carter & Carter, of New York City (Peter S. Carter, of New York City, of counsel), for appellees John Campbell and Susan M. Stewart.

Blumenstiel & Blumenstiel, of New York City (Abraham S. Arnold, of New York City, of counsel), for appellee Anheuser-Busch Agency.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. December 5, 1914, the steamer Oceana, while in their yard for overhauling, was sold by the owners, the Morse Dry Dock & Repair Company, to the Bermuda American Steamship Company, Limited. In accordance with the agreement of sale the bill of sale was deposited in escrow in the Columbia Trust Company, to be delivered only upon performance by the vendee of certain of the covenants in the agreement. It never was delivered, because the vessel was retaken by the Morse Company on account of the failure of the vendee to perform these covenants.

Between December 10, 1914, and March 8, 1915, a large amount of repairs, supplies, and other necessaries were furnished on the order of the Bermuda Company, although title was in the Morse Company by bills of sale duly recorded in the United States custom house for the port of New York, which was the home port of the vessel.

[1] The agreement of sale contained, among others, the following covenant by the vendee:

"(5) Until said ship is completely paid for, the purchaser covenants as follows:

"(a) To keep said ship clear of any liens from any cause, and if any lien or libel is filed or asserted, the same shall be immediately bonded by the purchaser. The purchaser agrees to promptly pay current bills for supplies and repairs to said ship, and exhibit at reasonable times the ship's accounts and bills to seller's representatives."

The libelants contend that this provision as to bonding is an authority to the vendee to create liens; but we regard it, on the contrary, as a prohibition added out of abundant caution.

On and after December 10th, while the vessel was still in the vendor's yard, the vendee was allowed by the vendor to take possession and fit her out at a cost of some $12,000, but she was not actually delivered to the vendee and removed from the yard until December 25th.

Sixty-nine different libels have been filed against the steamer in rem, which were consolidated in the present suit; the Morse Company, claimant, giving a stipulation in the sum of $100,000 to pay all awards to the libelants, with costs. Judge Veeder referred the claims to James K. Symmers, Esq., as special commissioner, who sustained the claims

of such of the libelants as did not know that the Bermuda Company was a conditional vendee, or who had asked the officers or agents of that company as to its connection with the steamer and been told that it was absolute owner, and who furnished repairs and supplies after December 25, 1914, the date of the actual delivery of the vessel.

He disallowed claims of certain of the libelants on the ground that they had notice sufficient to put them on inquiry as to the nature of the Bermuda Company's interest in the vessel. The District Judge sustained exceptions to the commissioner's finding that there could be no lien for repairs and supplies furnished before December 25, 1914. Evidently by inadvertence he included in this category the claim of the W. & A. Fletcher Co., $173.27 of which was disallowed by the commissioner for a different reason, viz., that they were for articles furnished, not to the steamer, but to the pier.

The Morse Company, claimant, has assigned error to the decree in allowing any of the claims, and Kniffin & Demarest Company have assigned error for dismissing their libel. The sole question is whether the court has rightly applied the act of Congress of June 23, 1910, the applicable sections of which are:

"1. Any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel, whether foreign or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien on the vessel which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

"2. The following persons shall be presumed to have authority from the owner or owners to procure repairs, supplies, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel.

"3. The officers and agents of a vessel specified in section 2 shall be taken to include such officers and agents when appointed by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel, but nothing in this act shall be construed to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

Obviously the act was passed in restriction of the rights of vessel owners and in the aid of those who furnish repairs, supplies, and other necessaries. It wiped out all difference between foreign and domestic vessels, and between repairs, supplies, and other necessaries furnished in the home port, as distinguished from those furnished in foreign ports, and between such as were ordered by the master and such as were ordered by the owners. It created a presumption of law of the vessel's liability for all repairs, supplies, and other necessaries ordered by the master, managing owner, ship's husband, charterer, any person to whom the management of the vessel is intrusted at the port of supply, owner pro hac vice, and conditional vendee. There is an exception in favor of the vessel owner, relied upon by the claimant in this suit, in the case of repairs, supplies, or other necessaries ordered by a charterer or conditional vendee, who has no authority to bind the vessel, provided the repair and supply men knew, or ought with reasonable

diligence to have learned, that the charter or conditional agreement of sale deprived the charterer or vendee of this authority.

[2] While it is true that an examination of the records of the custom house at this port would have disclosed the fact that the Morse Company, and not the Bermuda Company, was the owner of the steamer, knowledge of which fact would require the libelants to make further inquiry, we do not see any ground for holding that reasonable diligence required them to make any such search. They were entitled to a lien without giving credit to the vessel, and they were entitled to treat those intrusted with her management as authorized to order repairs, supplies, and other necessaries which would be secured by such a lien. It lay upon the claimant to show some fact or circumstance which would have put these libelants on inquiry, and it has not done so. This is the view taken by Judge Rose in The City of Milford (D. C.) 199 Fed. 956, and by the Circuit Court of Appeals for the Third Circuit in the case of The Yankee, 233 Fed. 919, 147 C. C. A. 593.

The claimant puts great stress on the decision of the Supreme Court in The Valencia, 165 U. S. 264, 17 Sup. Ct. 323, 41 L. Ed. 710, made long before the passage of the act of 1910. It is not applicable. In that case the least inquiry would have disclosed the fact that the company operating the steamer was a charterer bound to pay for coal; but the libelant supplied coal, not on the order of the master, but of the company, without making any inquiry whatever. If he relied for his lien upon the New York statute, we have held that it would be necessary for him to prove that he gave credit to the vessel. The Electron, 74 Fed. 689, 21 C. C. A. 12. This he could not do.

[3] We agree with Judge Veeder that the Bermuda Company was a person intrusted with the management of the steamer within the meaning of section 2 of the act, while she was lying in the vendor's yard, and that repairs, supplies, or other necessaries furnished between December 10th and 25th, when she was actually delivered and removed, are as much entitled to a lien as those furnished subsequently. We also concur with his finding, and that of the commissioner, that Kniffin & Demarest Company had sufficient notice to put them on inquiry, and that therefore their libel was properly dismissed.

The decree, modified by making the claim of the W. & A. Fletcher Company $17.70, with interest from January 30, 1915, is affirmed, with interest and costs; the latter only to those appellees who have filed briefs.