### THE LORD BALTIMORE.

(District Court, E. D. Pennsylvania. January 5, 1921.)

No. 70.

1. **Maritime liens ☞30—Maintainable, though person in apparent authority did not have authority to bind vessel.**

Under Act June 23, 1910 (Comp. St. §§ 7783–7787), a claimant may now maintain a maritime lien, though the person on whose apparent authority the supplies were furnished did not have authority to bind the vessel, if the claimant did not know, and could not with reasonable diligence have found out, such lack of authority.

2. **Maritime liens ☞17—Statute to be strictly construed, but not so as to defeat purpose.**

As Act June 23, 1910 (Comp. St. §§ 7783–7787), relative to maritime liens, results in the possibility that one person may be called upon to pay the debt of another, it must be strictly construed; but it must not be given such a construction as to defeat its main purpose, which is to enable those in charge of a vessel to obtain all necessary supplies.

3. **Maritime liens ☞30—Claimant must know supplies reasonably necessary, and that person ordering has apparent authority.**

One claiming a maritime lien for supplies furnished a vessel under Act June 23, 1910 (Comp. St. §§ 7783–7787), is bound to know that the supplies are in fact for the vessel, and in fact reach it, and are such as are ordinarily required on board a vessel, and thus reasonably necessary, and must at his peril make sure that the person ordering them has actual or apparent authority to bind the vessel.

4. **Maritime liens ☞23—Supplies are "necessaries," if within reasonable requirement of particular ship.**

When supplies are furnished to a ship on the order of one in apparent authority, whatever comes within the reasonable requirements of the particular ship are "necessaries," for which a maritime lien may be had under Act June 23, 1910 (Comp. St. §§ 7783–7787).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessaries.]

In Admiralty. Libel by James T. O'Brien against the steamer Lord Baltimore. On trial hearing on libel, answer, and proofs. Decree for libelant.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Lewis, Adler & Laws, of Philadelphia, Pa., for plaintiff.
John Cadwalader, Jr., of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. There are a series of cases of a like general character, which were all heard and argued as one. They are, because of this, disposed of in one opinion. The Fleishman libels, Nos. 47 and 48 of 1919, and the Tolman, Nos. 28 and 29 of 1919, are disposed of separately.

The respondent is the owner of the two passenger steamers Penn and Lord Baltimore. They were built specially to be and for a time were operated between Philadelphia and Baltimore, locking through the Delaware and Chesapeake Canal. Under a charter party, dated April 8, 1919, they went into possession ultimately of a corporation called the Washington & Southern Navigation Company, with the intention that they would be used on Chesapeake Bay and its tributaries. The charter party by its terms ran for four months from May 15, 1919. One of the stipulations of the charter party was that all expenses attending the operation of the steamers was to be met by the charterer, who also had an option to purchase, to be exercised within 90 days. Another stipulation was that a deposit of $10,000 was to be made to indemnify the owners against the payment of any liens which might be filed against the steamers.

The cause of action set forth in each libel is for repairs or supplies, for which a lien is claimed under the provisions of the act of Congress of June 23, 1910 (Comp. St. §§ 7783-7787). The answers, in addition to specific defenses to some of the liens, advance as a shield to be interposed for the protection of the owners the proposition that, as the act of Congress in effect makes the owner answerable for the debts of others, it should be strictly construed, and the claimants given no rights beyond what such strict construction would allow.

The general doctrine of the allowance of a maritime lien for supplies and repairs grew out of the policy of the law, prompted by the necessities of a ship. This policy and this necessity are obvious in the situation of a ship in a foreign port, but these considerations do not suggest a like right of lien for supplies furnished in a home port.

The act of Congress was intended to furnish a complete system in itself. The first section gives the right of lien to all who furnish repairs or supplies, without distinction as to whether the vessel is foreign or domestic, and imposing only the condition that they should be necessaries and furnished upon the order of the owner or by some person by him authorized, and provides further that this lien shall be enforced by a proceeding in rem, and exempts the claimant from any requirement to aver or prove that the repairs or supplies were furnished on the credit of the vessel. Section 2 of the act lists those who are presumed to possess the required authority, and denies such authority to those who are in physical possession or charge of the vessel, if their possession is tortious or unlawful. The third section somewhat extends the list of those who are thus presumed to have authority, but takes away the right of lien from any claimant who knew, or by the exercise of reasonable diligence might have learned that the

person on whose order the repairs or supplies were furnished was without authority to bind the vessel.

[1] It is thus made clear that a new statement of the policy of the law has been introduced. Those who make repairs or furnish needed supplies to vessels on the order of any one in apparent control are given the right of lien. There is thus wiped out the old distinction of work done or sales made on personal credit, and those made on the credit of the vessel, unless, of course, the right of lien has been waived. There is also wiped out the other distinction between vessels in a foreign and in a home port. A claimant may now maintain a lien, notwithstanding the fact that the person on whose apparent authority the supplies were furnished did not have authority to bind the vessel, if the claimant did not know, nor could with reasonable diligence have found out, such lack of authority.

[2] A construction must be given to the act which will afford a practical working rule to those dealing with vessels. The act of Congress results in at least the possibility that one person may be called upon to pay the debt of another, and any lien claimant is charged with notice of this possible result. A consequence is that the act must be strictly construed, and the claimant must do his part to minimize the danger of such a result. At the same time the act must be given such a construction as not to defeat its main purpose, which is to enable those in charge of a vessel to obtain all necessary supplies.

[3] It follows from this that every claimant is bound to know that the supplies are in fact for the vessel and in fact reached it; he is further put on guard to know that the supplies are such as are ordinarily required on board a vessel, and in this sense reasonably necessary, and he must further, at his peril, make sure that the person ordering these supplies is clothed with either the actual or the apparent authority to bind the vessel. When these features are present, the claimant may safely sell in reliance upon his right of lien. If any of them are absent, he is left to his other rights and remedies.

The above is the construction which has been given to the act of Congress in all of the adjudged cases. In these different cases some of these features are emphasized at one time and others at another. If, however, the cases are read with this rule of construction in mind they will be found to be consistent. Among them are the following: Piedmont v. Seaboard, 254 U. S. 1, 41 Sup. Ct. 1, 65 L. Ed. ——; The Sterling (D. C.) 230 Fed. 543; The Robert Dollar (D. C.) 115 Fed. 225; Coyle v. North America (C. C. A.) 262 Fed. 250; The Oceana (D. C.) 233 Fed. 139.

The Piedmont Case gives us a clear statement of the controlling principles which guide us in construing the act of Congress. There the supplies were of coal which was a "necessary." It was in fact supplied in reliance upon the claimant's right of lien in the sense that all parties to the contract thought the claimant had a right of lien against the ship. The coal was, however, neither sold nor delivered by the claimant to the ship. It was sold and delivered to an oil company, which owned the ship, and was afterwards—in fact, along with other coal—supplied by the owner to the ship. The right to a lien was de-

nied on the ground that, as the coal was neither sold nor delivered to the ship, the fact that it ultimately reached the ship gave the claimant no right of lien. The question determined there was not one of the credit extended, but whether the coal had been furnished to the ship.

[4] The Fleishman, as well as the Tolman, libels, are each in a class by themselves. All the other claims are disposed of by the findings that the libelants made repairs or furnished supplies to the steamer; that what was thus supplied were necessaries; that they were on the order of one presumptively authorized to act for the owner; and that the libelants did not know, nor could they, by the exercise of reasonable diligence, have ascertained, that the supplies were unauthorized by the owners. No hard and fast definition of "necessaries" can be given. When supplies are furnished to a ship on the order of one in apparent authority, whatever comes within the reasonable requirements, not of a ship, but of the ship to which furnished, are necessaries. The test is whether in kind and quantity what is furnished is within the reasonable needs of the ship's business.

In every instance of the furnishing of supplies, the situation speaks for itself to tell the claimant whether he has a right of lien. "Res ipsa loquitur." We must, however, know what the res is which is speaking. The ship tells the story of what she does. The thing to be supplied informs the claimant of whether or not it is reasonably within the ship's requirements. By holding that whatever is reasonably within the requirements of the ship are necessaries, it is not intended to rule that the owner assumes the burden of proving a negative. The lien is based upon the theory or presumption that the supplies are furnished to the ship and for the ship on the order of the owner. The natural inference is that the ship had need of them, unless something else appears. In the absence of anything contradictory of this, a finding of necessaries is prima facie called for and may be made.

Special findings of fact and conclusions of law were made in each case.