## THE PENN.

## THE LORD BALTIMORE.

(Circuit Court of Appeals, Third Circuit.  June 18, 1921.)

No. 2707.

1. **Maritime liens ⟨⟩12—Supplies for restaurant on passenger ship "necessaries."**

   Supplies for the restaurant of a passenger ship, making 12-hour trips daily, *held* "necessaries," within the maritime sense, for which a maritime lien against the ship may be maintained.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessaries.]

2. **Maritime liens ⟨⟩28—Furnisher of supplies on order of charterer held entitled to lien.**

   Under a charter party providing that "the working of this charter party" might be assigned by the charterer to a corporation, which was done, the managing officer of such corporation *held* to be a "person to whom the management of the vessel * * * is intrusted," within Act June 23, 1910, § 2 (Comp. St. § 7784), and one furnishing necessaries to the vessel on his order in another port in good faith, in reliance on his statement that the corporation owned the vessel, it having in fact an option to purchase, *held* entitled to a lien therefor under the act.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suits in admiralty by Max Fleishman against the steamer Penn and against the steamer Lord Baltimore.  Decrees for respondents, and libelant appeals.  Reversed.

Lewis, Adler & Laws, of Philadelphia, Pa. (Otto Wolff, Jr., of Philadelphia, Pa., of counsel), for appellant.

John Cadwalader, Jr., of Philadelphia, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.  These cases were argued together, both below and on appeal, and may be disposed of in one opinion.  They raise two questions.  The one which evidently controlled the court's judgment in dismissing the libels was:  Were the supplies which the libellant furnished the steamers reasonable and proper under the circumstances; or, in other words, were they necessaries?

The Steamers Penn and Lord Baltimore, hailing from the Port of Philadelphia and owned by the Baltimore and Philadelphia Steamboat Company, were chartered to Charles W. Harrison.  The charter party gave the charterer an option to purchase the steamers within a named period and the right to assign the "working of this charter party to a corporation of his choice," and provided, among other things, that the charterer should pay all expenses incidental to the operation of the steamers. Pursuant to a contemporaneous agreement between the owner and charterer, the charterer deposited $10,000 with a trust company to secure the owner "against any and all claims of a maritime nature

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

* * * that may arise during the possession of said steamers by the said Harrison or his assignees under (the cited) charter party." The charterer then assigned the charter party to the Washington-Southern Navigation Company, Inc.

This corporation operated the Steamers Penn and Lord Baltimore, during the time in question, in the transportation of passengers and freight between Washington and Norfolk, and other Bay points, on a daylight schedule, the vessels, bound on opposite courses, leaving one of the named ports in the morning and arriving at the other in the evening. Each carried ordinarily several hundred passengers and maintained a restaurant service, but the passage money did not include the price of meals.

The libelant delivered to the two steamers at Norfolk, Virginia, supplies of the kind, in the amount, and at the prices named in his libels, under orders to which we shall presently refer. These supplies consisted of a variety of things. A few were non-edible, such, for instance, as toothpicks, cigars and matches. But they consisted in the main of food ranging from plain substantial food like potatoes, and bread and butter to delicacies such as spring chicken and ice cream. After payment for the supplies had been refused and libels had been filed, the learned trial judge, on the hearing (first reviewing in the companion case of O'Brian v. Steamer Lord Baltimore [D. C. Pa.] 269 Fed. 824, the law of maritime liens as revised and clarified by the Act of Congress of June 23, 1910, 36 Stat. c. 373 [Comp. St. §§ 7783–7787]), was unable to find from their quantity and character that the supplies "were for the crew or were necessaries," but found that the supplies themselves indicated "that they were intended for a stock in trade to be sold on the ship but in no real sense were intended for her," and on this ground dismissed the libels. These appeals followed.

[1] Thus the real question raised by the decree is whether supplies for the restaurant of a passenger ship are necessaries within the maritime sense, for which a maritime lien against the ship can be maintained.

There is no dispute about the facts. The steamers were licensed passenger ships; they were provided with dining quarters; the charter party provided "that the owners shall * * * furnish at their expense full equipment for dining saloons, lunch counter, etc., ready for service"; the voyage of about twelve hours which each ship made daily covered a time within which at least one of several meals is ordinarily served; and the supplies, though not of the kind and quality usual for victualing a crew, were not unusual for passengers.

There is no hard and fast definition of "supplies or other necessaries" in the maritime law as declared by the act of June 23, 1910. The test of what is necessary is what is reasonably needed in the ship's business. If the ship is a freighter, supplies of the kind and quality usually used for victualing the crew are "necessaries," in that they are needed to enable the ship to prosecute the particular business in which she is engaged. Obviously, supplies of another kind and quality furnished a freighter are not necessaries for which a lien may be enforced under the Act. The Sterling (D. C.) 230 Fed. 543.

If the ship is a passenger ship, or, as in this case, partly one, she becomes engaged in another business with other needs in prosecuting the same. Among these needs are supplies for victualing the passengers she carries, considered with regard, as in this case, to the length and character of her voyages. In The Plymouth Rock, 13 Blatchf. 505, Fed. Cas. No. 11,237, where a passenger steamer plied between the City of New York and Long Branch, New Jersey, making several trips a day each way, the court found that food furnished the steamer for its passengers were necessaries, and, though dispensed to passengers through a restaurant, furnished a basis for a lien on the ship. The same principle, though concerned with wages of one engaged in dispensing nourishment on the ship, was invoked in the J. S. Warden (D. C.) 175 Fed. 314, and in cases there cited. Following these cases, the court in The Satellite (D. C.) 188 Fed. 717, though enforcing a Massachusetts statute distinguished from general maritime law only in that it afforded a maritime lien against a vessel in her home port, granted a maritime lien for liquor supplied a passenger vessel, saying:

"If passengers are carried, whatever may be reasonably supposed to meet the ordinary wants of the class of passengers expected must * * * be necessaries, whether strictly essential to their safety and comfort or not."

Without protracting this discussion, we express the opinion that the law of this line of cases is sound, that the facts of the instant cases invoke its principle, and that, in consequence, the decrees below must be reversed—if the other requisites of a valid maritime lien are present.

[2] The next requisite of a maritime lien for supplies or other necessaries furnished a vessel, enforceable by proceeding in rem under the Act of June 23, 1910, is that they must have been furnished upon the order of "the owner or owners of such vessel, or of a person by him or them authorized." Section 1 (Comp. St. § 7783). In cases where supplies are furnished a vessel, when, as here, there is between the owner and charterer an obligation on the part of the latter to protect the vessel and its owner from maritime liens, and the order for supplies is not given by the owner, the statute meets the situation by naming the persons who "shall be *presumed* to have authority from the owner or owners to procure * * * supplies, and other necessaries for the vessel." Section 2 (section 7784). These are, among others, "any person to whom the management of the vessel at the port of supply is intrusted" (section 2), including officers and agents of a vessel "when appointed by a charterer" (section 3 [section 7785]). But an order for "supplies or other necessaries," even when given by a person with apparent authority, does not sustain a maritime lien when "the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, * * * or for any other reason, the person ordering the * * * supplies, or other necessaries was without authority to bind the vessel therefor." Section 3; The Yankee, 233 Fed. 919, 922, 147 C. C. A. 593; The Oceana, 244 Fed. 80, 156 C. C. A. 508.

The evidence which was offered to prove that the supplies were furnished on the order of one in authority shows that while the actual

orders were given by the stewards of the vessels respectively, they were filled and the supplies delivered at the instance and request of Charles H. St. Johns, the Vice-President and General Manager of the Washington-Southern Navigation Company, Inc. This was the corporation to which the "working of the charter party" had been assigned by the charterer according to the charter party terms, and to which "the management of the (vessels) at the port of supply was intrusted"; and St. Johns was the managing officer of the corporation. We find nothing in the evidence to indicate that the libellant "knew, or, by the exercise of reasonable diligence could have ascertained, that because of the terms of the charter party * * * the person ordering the * * * supplies, or other necessaries, was without authority to bind the vessel." The Yankee, 233 Fed. 919, 147 C. C. A. 593; The Oceana, 244 Fed. 80, 156 C. C. A. 508. On the contrary, the libellant was led to believe that the steamers belonged to the Washington-Southern Navigation Company, Inc. The libellant asked St. Johns whether the steamers belonged to his company and St. Johns replied that his company had purchased them. We are of opinion that on these facts the supplies were delivered on the order of one in authority within the meaning of the Act.

The remaining question is, whether the supplies were delivered to the vessels libeled. As there was no dispute about this, we find that the three essentials of a maritime lien under the Act of Congress of June 23, 1910, as stated by the court below in its opinion and as defined by the Supreme Court in Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 41 Sup. Ct. 1, have been met, and that in consequence, the decrees below must be reversed and the libels reinstated.