## WALKER–SKAGETH FOOD STORES, Inc., v. THE BAVOIS et al.

District Court, S. D. New York.

Jan. 30, 1942.

Healy & Fusfeld, of New York City (Bernstein, Weiss & Tomson, Michael C. Bernstein, and Bernard Tomson, all of New York City, of counsel), for libelant.

Treacy & Gough, of New York City, for claimant-respondent.

RIFKIND, District Judge.

Only two issues of law require resolution: Does the vendor of supplies furnished to a vessel on the order of its master acquire an admiralty lien where the written agreement between the owner and the master imposes upon the master the duty "not to run up any bills other than strict emergency expenses without authorization of the owner or insurance carrier; this to include supplies or any other material"? Are food and liquors so furnished "necessaries" as that term is understood in the law of admiralty liens?

The Yacht Bavois was a 60-foot pleasure yacht out of the Port of New York, temporarily located at the City of Miami, Florida during the period February 21, 1941, to May 10, 1941. She was brought to Miami by Willard Reimheer who had prior thereto been engaged by her owner as captain and as agent for sale or charter. The agreement between the owner and the captain further provided: "2. He [Reimheer] agrees to care for the boat and to do all paint and repairs that he can do himself and in case of emergency to leave the boat in good hands or provide for its return. 3. He agrees not to run up any bills other than strict emergency expenses without authorization of the owner or insurance carrier; this to include supplies or any other material. In case of charter a signed agree-

ment is to be made according to the usual charter agreement used by Ford & Payne and that any further insurance expenses are to be paid for by the charterer; that the boat is to be kept in the United States tidal waters".

While the yacht was in Miami, in charge of Reimheer, and while the agreement was in effect, the libelant furnished provisions, including liquors, to the yacht on the order of Reimheer until the libelant received notice from the owner to discontinue. There is no dispute as to the delivery, the value and the non-payment. During the month of February the owner visited the yacht, saw some of the provisions on board, but made no inquiry concerning their purchase or payment. The provisions were not used by the owner but by the master.

The claimant asserts that the agreement between the owner and the master precludes the attachment of an admiralty lien. In that he is in error. Title 46, U.S.C.A. §§ 971, 972, 973. The purpose and scope of the admiralty lien after the enactment of the Act of June 23, 1910, c. 373, § 1, 36 Stat. 604, 46 U.S.C.A. § 971 note (the predecessor of Sec. 971 of Title 46, U.S.C.A.) have been fully expounded in Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 1920, 254 U.S. 1, 41 S.Ct. 1, 65 L.Ed. 97. In the case at bar, the agreement with the master does not expressly prohibit the creation of a lien for supplies. Where supplies are ordered by a charterer who by his charter has agreed to pay for such supplies and to save the owner harmless, a lien will nevertheless be created to protect the furnisher of such supplies. The charter party must expressly prohibit the creation of liens if the owner is to be protected against such a contingency. Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co. of California, 1940, 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197. The logic of that decision applies with even greater force to a transaction between a supplier and a master entrusted by the owner with the care of the vessel. It would defeat the entire purpose of the statute if knowledge of special instructions from the owner to the master could be imputed to the supplier of necessaries.

I have serious doubts whether the limitations of Section 973 apply to a master appointed by an owner or only to officers and agents appointed by a charterer, an owner pro hac vice, or an agreed purchaser in possession of the vessel. If the limitations do not apply, then it is immaterial whether by reasonable diligence the libelant could have ascertained the master's lack of authority. However, I need not resolve the doubt, since I find as a fact that by the exercise of reasonable diligence the furnisher would not have learned of the master's lack of authority to subject the vessel to an admiralty lien. As a practical matter there was not available to the supplier any source of information other than the master. The admiralty lien is intended not only for the protection of suppliers but also for the protection of vessels which would for lack of such lien find themselves in distant ports unable to procure necessary credit. In the instant case the vessel was many hundreds of miles from its home port. Both the supplier and the vessel should have the benefit of reliance upon the master's apparent authority.

The claimant further asserts that in any event liquors do not constitute necessaries for which an admiralty lien will attach. Whether the furnisher of liquor will be given the benefit of a lien is a question to be answered by the application of well established tests. "There is no hard and fast definition of 'supplies or other necessaries' in the maritime law as declared by the act of June 23, 1910. The test of what is necessary is what is reasonably needed in the ship's business. If the ship is a freighter, supplies of the kind and quality usually used for victualing the crew are 'necessaries,' in that they are needed to enable the ship to prosecute the particular business in which she is engaged. Obviously, supplies of another kind and quality furnished a freighter are not necessaries for which a lien may be enforced under the Act. The Sterling, D.C., 230 F. 543." The Lord Baltimore, 3 Cir., 1921, 273 F. 990, 991. Among the supplies which were furnished to the Lord Baltimore and for which the Circuit Court permitted the furnisher to have an admiralty lien were "delicacies such as spring chicken and ice cream". And see also The J. S. Warden, D.C.S.D. N.Y.1910, 175 F. 314; The Satellite, D.C. Mass.1910, 188 F. 717. In the last cited case the court said (page 720 of 188 F.): "There is no doubt that in determining what supplies are necessaries regard must be had to the character of the voyages or the employment in which the vessel is being used, nor that a more inclusive construction of the term has had to be adopted, as the uses to which vessels are put and the pur-

poses for which they are employed have come to be more various in character".

The test applied in The Robert Dollar, D.C.Wash.1902, 115 F. 218, seems to have yielded to a broader conception.

Both the character and the quantity of the provisions furnished in the instant case are within the usual requirements of a pleasure yacht spending the winter months at a fashionable resort like Miami, Florida. I find that the provisions including the liquors were necessaries for the pleasure yacht Bavois.

The libelant is entitled to a decree. Findings in accordance with this opinion have been prepared and signed.