**ATLANTIC AND GULF STEVEDORES, INC., Plaintiff,**

v.

**M.V. ROSA ROTH, etc., Defendants.**

**No. 83 Civ. 1290 (WK).**

United States District Court, S.D. New York.

July 17, 1984.

**1034**

McHugh, Leonard & O'Conor by Douglas A. Franklin, New York City, for plaintiff.

Walker & Corsa by Christopher Mansuy, New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiff, a stevedoring company, has brought this action *in rem* against the defendant vessel whose cargo it discharged at the behest of a time charterer. At issue before us now is whether or not—and to what extent—plaintiff has established a maritime lien against the vessel for this work. Plaintiff and defendant have both moved for summary judgment.

The applicable statutes governing maritime liens are as follows:

Any person furnishing repair, supplies, towage, use of a drydock or marine railway, or other necessaries to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel....

46 U.S.C. § 971.

The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted....

46 U.S.C. § 972.

The officers and agents of a vessel specified in section 972 of this title shall be taken to include such officers and agents when appointed by a charterer...

46 U.S.C. § 973.

The vessel was chartered on a time-charter basis to Cape Lines, Ltd., which is not a party to this action. Cape Lines and three consignees of the cargo engaged plaintiff to discharge the ship's cargo at the port of Houston, Texas. The three consignees requested that discharge of their cargo be performed on a "straight-time" basis, *i.e.,* without overtime work; however, Cape Lines' agent, Norton Lilly, ordered plaintiff to discharge its cargo on an overtime basis. In addition to the time spent discharging the cargo—including overtime—plaintiff charged Norton Lilly for certain periods when the longshoremen performed no discharging work, including "detention time" (time for which the stevedores were hired but could not work on account of inclement weather); "guarantee time" (periods for which the stevedores must be paid pursuant to their collective bargaining agreements with the International Longshoremen's Association); and time spent opening the vessel's hatches. Plaintiff presented its work vouchers to the vessel's captain, who stamped them with a legend indicating that any maritime lien would be disavowed. No such disavowal had previously been indicated.

Cape Lines never paid the stevedoring charges; plaintiff has never pursued any remedies against it, electing instead to proceed against the vessel on the theory that the services provided were "necessaries" which the charterer's agent was authorized to incur and thus that a maritime lien had been established.

To begin, we note that Cape Lines and Norton Lilly do fall under the presumption of § 973, *supra*, which presumption cannot be rebutted by a disclaimer made *after* the work was performed.[1] We thus pass to the

---

1. *Atlantic & Gulf Stevedores, Inc. v. M.V. Grand Loyalty* (5th Cir.1979) 608 F.2d 197, on which defendant relies, does not hold otherwise. In that case the Court held that an after-the-fact *affir-* *mation* of liability was of equal validity to such an affirmation made before the services were rendered—quite a different matter from a *denial* of liability, which a vessel would have a clear

second part of our inquiry: whether the services rendered by plaintiff vessel are "other necessaries" to the vessel under § 971.

Defendant presents two related arguments in support of its motion: first, that none of the services was performed "to" the vessel, *i.e.*, that the vessel did not benefit from them;[2] and second, that even if the vessel did benefit, the overtime, detention time, guarantee time and time spent to open the hatches ("non-work time") were not "necessaries." We reject the first, and accept the second with respect to the overtime only.

■ It is well settled that under "appropriate circumstances" stevedoring services may give rise to a maritime lien. *Nacirema Operating Co. v. S.S. Al Kulsum* (S.D.N.Y.1975) 407 F.Supp. 1222. In examining the benefit derived by a vessel from, or the necessity to it, of goods or services ordered by a charterer, courts have examined the purpose for which the vessel was chartered. Thus, liquor and food have been held "necessary" to a yacht chartered as a pleasure boat, *Walker-Skageth Food Stores v. Bavois* (S.D.N.Y.1942) 43 F.Supp. 109; trans-shipment of cargo is "necessary" where "[d]elivery of freight to the destination agreed upon is the normal function of [the] vessel," *P.T. Perusahaan Pelay. Sam. Trikora L. v. T.S. Salzachtal* (E.D.N.Y.1974) 373 F.Supp. 267. Here, the vessel was chartered out to carry freight; it needs no great expertise in admiralty to know that a vessel cannot fulfill that purpose without loading and unloading services such as those provided by plaintiff. We therefore cannot say that the services provided by plaintiff could not have benefitted the vessel or been necessary to it.

■ With respect to the non-work time, while this is not strictly necessary to enable the vessel to carry out its function, it

is agreed by the parties that, pursuant to controlling collective bargaining agreements, the stevedores must be paid for each block of time for which they are hired, irrespective of how much of that block is actually spent working. It thus appears that, without paying for the non-work time within those blocks, the charterer could not have hired the stevedores for the work-time. If the work-time benefits and is necessary to the vessel, and cannot be had without payment for such non-work time as may occur due to inclement weather or other conditions, the non-work time must be incurred also, and dispensing with it would mean failing to provide benefits and "necessaries" to the vessel. We therefore find that this charge is rightly the subject of a maritime lien.

■ With respect to overtime, however, we can make no such finding. There is no indication that the vessel could not have been unloaded on a "straight-time" basis, as was requested by the cargo interests, nor that the vessel's usefulness for its intended purpose would have been in any way impaired had the overtime not been incurred. A House Report discussion of a 1971 amendment to § 973 which eliminated "no lien" provisions in charter contracts states:

> Granting the materialman a lien encourages the prompt furnishing of necessaries to vessels so that they can be speedily turned around and put to sea. This is especially significant today when the emphasis on vessel performance is reduced port time and increased speed.

H.R.Rep. No. 920340, 92nd Cong., 1st Sess., reprinted in (1971) U.S.Code Cong. & Admin.News, pp. 1353, 1365. It was no doubt of great importance to Cape Lines, which as time charterer paid for the time it used the vessel, to discharge the cargo as quickly as possible. However, while "turn-around speed" might have been of some

---

motive to issue after the completion of the work.

**2.** Defendant presented this argument as supporting dismissal of the complaint for failure to state a claim upon which relief can be granted.

We thus construe it to be a challenge to all stevedoring services for which plaintiff is attempting to assert a lien, an interpretation confirmed by a letter from defendant's counsel dated July 6, 1984.

theoretical import to the vessel, we cannot imagine that in practice this could have made the slightest difference to it, so long as the vessel was in use for its intended purpose and its time paid for.

Defendant's motion for summary judgment is therefore granted with respect to the charges incurred for overtime work. Plaintiff's motion for summary judgment is granted in all other respects. Let plaintiff submit an appropriate judgment on ten days' notice.

SO ORDERED.