### Case No. 7,557.

The J. R. HOYLE.

[4 Biss. 234.] [1]

District Court, D. Indiana. July, 1868.

Chas. E. Marsh, for the motion.
Gordon & March, contra.

McDONALD, District Judge. On the 30th of November, 1867, John H. Lee and Joseph

---

[2] [9 Wall. (76 U. S.) 425.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

R. Hoyle filed in this court a libel, in a cause civil and maritime, against the steamboat J. R. Hoyle. Afterwards, under this proceeding, divers other persons—among whom were Wadkins and Raymond, and George Brose and John J. Brose—intervened, and filed libels against the same boat. George Brose and John J. Brose now appear, and move that the libel of Wadkins and Raymond be dismissed.

Various causes for this motion have been stated; but they are all comprehended within the following: 1. That there is nothing stated in the libel to authorize the court to render any judgment in favor of Wadkins and Raymond. 2. That the libel is sworn to by the proctor, and not by either of the libellants. 3. That the occupation and residence of the libellant are not stated in the libel. The libel, after reciting the filing of Lee and Hoyle's libel, and the seizure of the boat under it, alleges that, at Shreveport, Louisiana, on the 2d of February, 1866, Wadkins and Raymond "loaned to the said boat the sum of five hundred dollars, for the purpose of releasing said boat from an attachment at that place, where said boat had been attached and held in custody for a debt of said sum of five hundred dollars;" that "said sum of five hundred dollars was, by said libellant, for the purpose aforesaid, paid to one W. B. Lewellen, who was then the clerk and owner of said boat; and that, at the time said sum of money was thus loaned, the libellants received from said Lewellen a receipt as follows: 'Steamer J. R. Hoyle, Dr. W. H. Wadkins and J. Raymond $500, borrowed, money, this Feb. 2d, 1866. W. B. Lewellen.'" The libel further avers, that this five hundred dollars was applied to said purpose, and that no part of it has been repaid. There are other allegations in the libel; but it is unnecessary to state them with reference to the present motion. We will proceed to examine the objections on which the motion to dismiss the libel is founded.

I. It is insisted that there is nothing stated in the libel that would authorize the court to render any judgment in favor of the libellants. This objection is in the nature of a demurrer, and proceeds on the supposition that the claim set up in the libel is not one of admiralty cognizance. It is correctly said in support of this motion, that the writing copied into the libel is not a bottomry bond. It has scarcely a feature of such a bond. Indeed, it is no bond at all, for it is not sealed. But is not the transaction set out in the libel a maritime loan operating in rem? If so, it furnishes ground for maritime jurisdiction. "For if a master borrow money abroad for the necessities of the ship, and so apply the same, and no instrument of bottomry or hypothecation is given the law merchant gives to the lender a lien on the ship for the amount, in addition to any remedy he may have at common law." 1 Pars. Mar. Law, 408. Such a lien, it

seems, the lender would have, though nothing was expressly stipulated as to the liability of the vessel. Indeed, it is at this day a well established doctrine, that a person who lends money for the use of a ship in a foreign port has the same lien on the vessel as material men have. Davis v. Child [Case No. 3,628]; The Sophie, 1 W. Rob. Adm. 368. Shreveport, where this loan was made, is a foreign port within this rule. The General Smith, 4 Wheat. [17 U. S.] 438.

The case of Maitland v. The Atlantic [Case No. 8,980], has been cited in support of this motion. It is my opinion that the case gives no countenance to the motion. It decides that a bottomry bond with exorbitant usury is invalid if it stipulates that the payment of it shall not depend on the fortunate issue of the voyage; and that if a master borrows money at a foreign port to repair his ship, and executes a bill of exchange for its repayment, the lender waives his lien on the vessel for the money. But that is not the present case. Here was no bottomry bond, no bill of exchange, nothing done to waive a lien. And the judge, in deciding that case, said: "It is perfectly true, * * * that the very fact that advances had been made to defray the expenses of repairs, would create a lien upon the vessel, if such advances had been made upon the credit of the vessel; and that such a lien would exist, if there had been no special act of hypothecation or mortgage. It would indeed exist by operation of law. But if instead of relying on the general principles of maritime law, the lender of the money chooses to exact of the master a special hypothecation of the vessel and cargo, and causes to be inserted in the instrument clauses which operate as a waiver of his lien, or as a forfeiture of his right to proceed in rem, how can a court of admiralty grant him relief? If, as in the case now under consideration, he exacts maritime interest on his loan, and at the same time expressly refused to assume maritime risks, is it not clear that the very instrument on which he relies for his security is, by the well recognized principles of maritime law, an abandonment of all claim against the vessel? It is well settled, that if a material man gives personal credit, even in the case of material furnished to a foreign ship, he loses his lien." This reasoning strongly supports the libel under consideration, in which there appears to have been no waiver of any kind.

But it is understood that this case from Newberry is cited as applicable to the present one on the ground that the instrument copied into the libel is a personal security like the bill of exchange in the case of Maitland v. The Atlantic [supra], and is therefore a waiver of the lien on the boat. I cannot so regard it. The instrument in question is neither a bill nor a note. It is no personal security. It is, indeed, signed by W. B. Lewellen. But it contains no promise by him. On the contrary, it plainly expresses

the steamer as the debtor; and I think it must be construed rather as creating a lien on the boat, than as destroying it. It is plainly intended to show that the steamer is liable for the money borrowed; and it is extraordinary that it should be adduced to establish the extinction of that liability.

It is argued, moreover, that the libel does not allege that there was any necessity for this loan, and is therefore bad. It is certainly a general rule that the master or captain of a vessel cannot, without the owner's consent, create a lien on it for money loaned or materials furnished, unless the same are necessary in order to prosecute the ordinary business of the vessel. But this rule does not apply to the owner of it. The rule is restricted to masters and other agents on this obvious principle, that, as generally the owner does not expressly authorize the master or other person to create liens on his vessel, the agency is only implied, and it is not reasonable to imply such an agency unless there was a necessity for the money advanced in order to prosecute the voyage. Smith, Merc. Law, 411. This reason does not apply where the owner obtains the loan. In that case, the lender is under no obligation to inquire whether the loan is necessary in order to the prosecution of the voyage. It is enough that the money is to be applied to the purposes of the voyage. 1 Pars. Mar. Law, 410, and cases cited in note 6. Now the libel in this case avers that the loan was obtained by W. B. Lewellen, "who was then the clerk and owner of said boat." As owner, he could create the loan whether there was any special necessity for it or not.

But I do not concede that there was not such a necessity for this loan as to justify an agent in making it and binding the boat for it. The steamer was seized under an attachment, and was in the legal custody of an officer. She could not proceed on her voyage till she was released. How long she would be delayed thereby, who could tell? This was as strong a necessity as the want of provisions, or materials, or even repairs on the boat, could be. The Aurora, 1 Wheat. [14 U. S.] 96. The first objection to the libel, therefore, cannot be sustained.

II. It is objected that the libel is sworn to by a proctor, and not by either of the libellants. I find nothing in the rules promulgated by the supreme court requiring libels like the present to be sworn to. By the third and fourth rules of the court of the Southern district of New York, a libel praying an attachment in personam or in rem, or demanding the answer of any party under oath, must be sworn to by the libellant. Betts' Adm. 22, 23. But even these rules, if we had such here, would not reach the present case. Prof. Parsons says: "Regularly, the libel should be signed by the libellant or his agent, and by a proctor of the court, and, unless brought in behalf of the government, verified by the oath of the libellant. This matter, however, is of course very dependent on the practice and rules of the several district courts of this country." 2 Pars. Mar. Law, 680. In Coffin v. Jenkins [Case No. 2,948], that distinguished judge says, "I observe, too, that there are some irregularities in the present case. The libel is sworn to, but not the answer. The reverse is the usual and proper practice, although there is no objection to the libel being sworn to if the libellant chooses." From this language, I suppose that Judge Story did not consider that, as a general rule, libels must be sworn to. The seventh admiralty rule of the supreme court provides, that "in suits in personam no warrant of arrest, either of the person or property of the defendant, shall issue for a sum exceeding five hundred dollars, unless by the special order of the court upon affidavit or other proof showing the propriety thereof." The present case is not within this rule; and it is a fair deduction from the rule, that libels not falling within it, need not to be sworn to. The fourth rule in admiralty adopted by this court is very similar to the seventh rule of the supreme court. It provides that "all libels praying process of arrest, whether in rem or in personam, shall be verified by oath or affirmation of the libellant, unless for sufficient cause such oath shall be dispensed with by the special order of the judge." I do not think that the present case is within this rule. But even if it were, I would not sustain the motion made by G. and J. J. Brose to dismiss the libel. The rule was not made for their benefit, but for that of the owner of the boat. The want of an affidavit to the libel can do them no harm; and they have no right to complain of it. Even if the owner made this motion, I should be inclined to overrule it, and permit the affidavit now to be added.

III. It is also objected to this libel that it fails to state the occupation and residence of the libellants as required by the twenty-third rule of the supreme court. That rule only requires that the libel, "if in personam," shall state "the names, and occupations, and places of residence of the parties." The present is a libel in rem, and not in personam. Therefore this objection is without weight.

The practice of moving to dismiss libels for defects apparent on their face, ought not to be indulged. If a libel is defective, the proper course is to file exceptions to it. If these are sustained, the court would allow the libellants to amend. But if the motion to dismiss is sustained, the cause is out of court, and no amendment can be made. Admiralty courts are very liberal in allowing amendments; and the indulgence of motions to dismiss would hardly be consistent with that liberality. If, therefore, the objections taken to this libel were well founded, I should be reluctant to sustain a motion to dismiss it—especially so, if, as in the present

case, the motion is made, not by the owner of the boat, but by interveners asserting claims against the boat, and occupying the same position in the suit as the libellants Wadkins and Raymond do. The motion to dismiss is overruled.