## BOVARD *et al.* v. THE MAYFLOWER.

*(District Court, W. D. Pennsylvania.   June 1, 1889.)*

**1. MARITIME LIENS—SUPPLIES FOR RESTAURANT ON BOAT.**

Under the Pennsylvania act giving liens against domestic vessels navigating the rivers Allegheny, Monongahela, or Ohio, a lien exists for supplies furnished to an excursion boat, and dispensed to passengers from a lunch-counter kept on board the boat, such supplies having been furnished upon the credit of the boat on the order of the master, a part owner.

**2. SAME.**

Debts thus contracted for soda-water, cider, and spirituous and malt liquors, supplied to the boat and dispensed thereon to passengers, are liens under the act.

**3. Same.**

The lien for a debt thus contracted for provisions supplied to the boat, is not affected by a private agreement between the owners of the boat and the person in charge of the lunch-counter, unknown to lien claimant.

In Admiralty. *Sur* exceptions to the report of the commissioner distributing the fund in the registry of the court.

*E. P. & C. W. Jones*, for Wilson, Bailey & Co.

*A. Y. Smith*, for J. C. Buffum.

*Knox & Reed*, (*E. W. Smith*, of counsel,) for W. H. Holmes & Son.

*J. Chas. Dicken*, for G. S. Martin & Co.

*D. T. Watson*, for Jos. Walton & Co.

*Miller & McBride*, for report.

ACHESON, J. The Pennsylvania act of April 20, 1858, (1 Purd. Dig. 126,) giving liens against domestic vessels navigating the rivers Allegheny, Monongahela, or Ohio, is awkwardly drawn, but it has always been construed by this court as embracing stores and provisions furnished to any such vessel upon the credit thereof, when ordered by the owners, or by the master or other authorized agent. Under the general admiralty law, necessity, as respects supplies to a vessel, is a relative term, and is open to much latitude of construction. Ben. Adm. § 268. In the case of *The Plymouth Rock*, 13 Blatchf. 505, it was adjudged that a lien existed for food of various kinds supplied to a vessel engaged in making several trips each day between New York and Long Branch, although the food was dispensed to passengers from a restaurant on board the vessel. In the Pennsylvania act the word "necessity" does not occur, nor is there any express limitation as respects the nature of the supplies for which a lien is given. Where the owner himself gives or sanctions the order, there would seem to be no good reason for questioning the existence of a lien because of the alleged absence of necessity, or the supposed unfitness of the articles, if the goods were furnished in good faith upon the credit of the vessel. *The Hoyle*, 4 Biss. 234, 238; *The James Guy*, 1 Ben. 112. At least that view should prevail in such a case as this, where the fund for distribution is the surplus remaining after the maritime liens are paid, and all the claimants come in only by virtue of the local statute.

The Mayflower was an excursion boat plying in the vicinity of Pittsburgh, and there was a lunch-counter on board the boat for the accommodation of the passengers. The claim of J. C. Buffum & Co., amounting to $67.32, is for a class of goods designated in the testimony as "soft drinks," principally soda-water and syrup, furnished to the Mayflower in July and August, 1888; and the claim of W. H. Holmes & Son, amounting to $428.20, is for spirituous and malt liquors furnished to the boat in 1887 and 1888. It is shown that, with the knowledge and sanction of Capt. Lewis N. Clark, the master of the Mayflower, and one of her owners, all these goods were sold and delivered to the boat, upon the credit of the boat, and were used on her—sold to the passengers. The claim of George S. Martin & Co., amount-

ing to $48, is for cider sold and delivered to the boat upon her credit, on the order of Capt. Clark, and in large part used on the boat by the excursionists and crew. Now, these claims were disallowed upon the ground that the articles were not necessaries. But in view of what I have heretofore said, and under the authorities cited I am constrained to differ from the learned commissioner. The term "provisions" has been held to embrace wines and brandy. *Mooney* v. *Evans*, 6 Ired. Eq. 363. Under all the circumstances, I think the debts due these claimants were liens against the Mayflower within the fair meaning of the act.

I am unable to concur with the commissioner in his disallowance of $1,178.88, part of the claim of Wilson, Bailey & Co., for provisions furnished to the Mayflower during the few months when Fred Pastre and W. P. Clark ran the lunch-counter under an arrangement with the owners of the boat. It appears that those provisions were furnished under a general order of Capt. Lewis N. Clark. In particular instances, indeed, Pastre ordered some of the goods, but the claimants understood that he was the steward of the boat, and they gave no personal credit to him. In his report the learned commissioner refers to the evidence taken in the case of *Marx* v. *The Mayflower*, and treats it as evidence to be considered in this case. But this is not allowable. The present lien claimants were not parties to that suit. It does not appear that the evidence taken therein was offered in this case, and, if it really was, it was only admissible to the extent of showing that Pastre gave contradictory testimony in the two cases. But, independently altogether of Pastre's testimony, it is here clearly shown that Wilson, Bailey & Co., in pursuance of a general order given by Capt. Clark, sold and delivered all said provisions to the Mayflower upon the credit of the boat, and that they were actually used on the boat. Nor is there sufficient evidence to show that these claimants had any knowledge of the alleged arrangement between the owners of the boat and Pastre and W. P. Clark. On the contrary, it satisfactorily appears that they had no knowledge on that subject. In this respect this case differs widely from that of *Marx* v. *The Mayflower*.

Touching the claim of Joseph Walton & Co., for the cost of repairing their fuel-flat, the action of the commissioner was entirely correct. The damages to the flat could only be allowed as a lien of the fifth class under the act. And now, June 1, 1889, the exceptions to the commissioner's report filed by J. C. Buffum & Co., W. H. Holmes & Son, and George S. Martin & Co., and the first and second exceptions filed by Wilson, Bailey & Co. are sustained, but all other exceptions are overruled; and the case is recommitted to the commissioner, with directions to correct his schedule of distribution in conformity with this opinion.