## THE NEPTUNE.

(Circuit Court of Appeals, Second Circuit. November 16, 1921.)

No. 27.

1. **Salvage** ☞39, 41—**No lien by crew on vessel earning salvage money through their efforts; crew's lien on other vessel not lost by their owner's act.**

The members of the crew of a vessel, at a time when the vessel rendered salvage services to another vessel, have no lien for their share of the salvage money on their own vessel, on the ground that it was through their services that it earned the salvage money; and this is true, although the owner of their vessel at the time of the salvage service demanded and received from the owner of the other vessel a sum in "full payment for the salvage services," and thereafter sold the vessel and became "execution proof," their remedy being either resort to salvage lien on the other vessel, as to which the former owner's settlement, made without their consent, would not bind them, or ratification of his settlement and suit in personam against him for their share.

2. **Maritime liens** ☞26—**Not extended by construction.**

The secret lien maritime is and always has been stricti juris, and therefore not to be lightly extended by construction or inference.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by Alfred S. Walling and another against the steam tug Neptune, her engines, etc., in which one Hans Swensen (libelant in another cause against the same vessel) intervened. Decree for libelants, and intervener appeals. Reversed and remanded, with directions to dismiss the libel.

Foley & Martin, of New York City (Geo. V. A. McCloskey, of New York City, of counsel), for appellant.

Alexander & Ash, of New York City (Mark Ash, of New York City, of counsel), amicus curiæ.

Joseph P. Nolan, of New York City (Edward J. Garity, of New York City, of counsel), for appellees.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge. Libelants were members of the Neptune's crew at a time when she rendered salvage services to the barge Columbia. They sue for themselves and the rest of said crew, but by what authority they represent their fellows does not appear.

The owner of Neptune, at time of salvage service, demanded and received, by private treaty, from Columbia's owners, a sum of money which (between the two owners) was deemed to be "full payment for the salvage services" aforesaid, and he neither paid nor offered to pay any portion thereof to libelants or other crew members. Shortly thereafter the Neptune was sold under process in certain undefended suits in rem. A fund was thus produced, and another alleged lienor was admitted by due order, to defend against the claim of this libel.

It being admitted that libelants joined in the salvage service to Co-

lumbia, and had liens upon that vessel for their labors, the theory of libel is that, because, in the words of the pleader, "the said tug Neptune earned as the result [of libelants'] services [certain money], and no portion [thereof] has been paid to any of the libelants," therefore libelants have a maritime lien upon the Neptune for whatever the court deems their fair share of the settlement money. The court below adopted this view, gave decree for libelants (and other crew members who never appeared), and the intervener took this appeal.

That hitherto no one has suspected the existence of this asserted lien, is admitted. Changing conditions of human activity continually require the law to keep step with humanity, and any legal system which cannot do this fails in one of its highest duties. But when there confronts us no new condition, no new human necessities, the assertion of a new right is justly viewed with distrust; and, as has been often said, the silence of the books is eloquent.

In the situation presented there is nothing new, though such meanness as that apparently exhibited by the former owner of Neptune is happily rare. There is no necessity for inventing a new maritime lien (if that can ever be done); and it remains only to ascertain whether existing law recognizes any analogies compelling belief that, although unused, this lien has been and now is in the armory of admiralty. If not admitted, it is too plain for more than mention that the claim is not for salvage. It does not fall within rule 19 (now 18) of the General Admiralty Rules (267 Fed. xi). The opinion in Sheldrake v. The Chatfield (D. C.) 52 Fed. 495, renders further discussion unnecessary.

It is sought either to use the wages lien as an analogy, or to treat this demand as one for, or like, wages; because libelants, as members of the crew, enabled the Neptune to earn salvage; therefore they benefited that vessel, and consequently have a lien for (apparently) the pecuniary value of such benefit. There is in this a misapprehension of the nature of the wage lien. It is based on contract; the moment one joins a crew by agreement, the ship is his security for wages, contractual, reasonable, or statutory, as the case may be. But many a discovered stowaway has worked quite as hard, and quite as much for the vessel's benefit, as many crew members; but, unless he were put on the articles, he would have no lien for wages.

Nor does every maritime contract for wages supply a lien, for the master has none; yet his is a large share in most salvage awards, and it cannot claim any kinship to a wage lien. But salvage service, though nowadays often rendered in pursuance of contract, is essentially something voluntarily given, and outside the positive engagements of those giving, wherefore it is the policy of the law to encourage generosity and boldness by reasonably liberal awards.

But a seaman by his shipment contract is not bound to salve; the law encourages him so to do, by rewards out of what he saves. "No cure, no pay," is the essence of salvage (Roff v. Wass, Fed. Cas. No. 11,999, Id., Fed. Cas. No. 12,000; and for a curious differentiation between salvage and wages see The Centurion, Fed. Cas. No. 2,554. It logically follows that, while the seaman's contract exists, he is as much bound to labor for his ship in storm or misfortune, as at other

times; wherefore he cannot, qua seaman, demand salvage from his own ship. See The Triumph, Fed. Cas. No. 14,183, and especially The York, Fed. Cas. No. 18,140, where Sprague, J., held a man left aboard alone by his mates, escaping after collision, released from his engagement by such abandonment, and therefore entitled to salvage for having, unaided, sailed the injured vessel to a harbor of refuge. There is no resemblance or analogy between salvage and wages, lending aid to libelants' contention.

It is not doubted that the Neptune's crew had a lien on the Columbia; they still have it, though now probably too stale for enforcement. The so-called settlement by their owner, made without their consent, does not bind them, because the owner cannot release what is not his own; i. e., the independent rights of each and every officer or seaman, who contributed to a successful salvage effort. The Lowther Castle (D. C.) 195 Fed. 604. Nor is it doubted, that seamen may ratify an owner's settlement, and sue in personam for a share thereof; (The Olive Mount [D. C.] 50 Fed. 563; Conekin v. Lockwood [D. C.] 231 Fed. 541); but the fact (asserted in briefs) that this settling owner has absconded, or is "execution proof," is assuredly no reason for converting a claim against him into a lien on a vessel he used to own.

There being no direct authority for this alleged lien, and finding no controlling analogy therefor, we point out, in conclusion, that the secret lien maritime is, and always has been, stricti juris (Piedmont, etc., Co. v. Seaboard, etc., Co., 254 U. S. 1, 41 Sup. Ct. 1, 65 L. Ed. ——, The Saturnus, 250 Fed. 407, 162 C. C. A. 477, 3 A. L. R. 1187), and therefore not to be lightly extended by construction or inference.

Decree reversed, with costs, and cause remanded, with directions to dismiss the libel, with costs.