## THE GDANSK.

(Circuit Court of Appeals, Second Circuit. November 3, 1924.)

No. 30.

**1. Maritime liens ⚖=>7—Food and supplies for passengers are necessaries.**

Food and supplies for passengers of a vessel are necessaries, and the furnishing of such supplies conforms to the maritime service of the vessel, and gives a right of action in rem.

**2. Maritime liens ⚖=>8—Contract to supply food to alien passengers while temporarily removed to quarantine station held not to give maritime lien on vessel.**

A contract made by libelant, a caterer, with the agent of a steamship company, to furnish food and supplies to the alien passengers of a vessel to arrive, while such passengers were temporarily removed to a quarantine station pursuant to Immigration Act Feb. 5, 1917, § 15 (Comp. St. § 4289¼hh), which contract was not made on the credit of the vessel, and in which its officers had no part, held not to give a maritime lien.

**3. Maritime liens ⚖=>26—Not to be extended by construction.**

A maritime lien imports a tacit hypothecation of the subject of it, and, being a secret lien, is stricti juris, and not to be lightly extended by construction or inference.

**4. Maritime liens ⚖=>12—Immigration Act held not to create lien on vessel for maintenance of alien passengers, temporarily removed to quarantine station.**

Immigration Act Feb. 5, 1917, § 15 (Comp. St. § 4289¼hh), in providing that, when alien passengers are temporarily removed from a vessel to a quarantine station, the expenses of their removal and maintenance shall be paid by the vessel or its owners, master, etc., does not create a maritime lien on the vessel for such expense.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by Alfred Di Pesa against the steamship Gdansk, Abram L. Burbank, receiver, claimant, with later libel against the proceeds of the sale of the Gdansk, claimed by the New York Harbor Dry Dock Corporation, as assignee. From the decree denying libelant a maritime lien, he appeals. Affirmed.

Loomis & Ruebush, of New York City (Homer Loomis and J. Newton Nash, both of New York City, of counsel), for appellant.

Rushmore, Bisbee & Stern, of New York City (Charles P. Howland and Bertram F. Shipman, both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The first of these libels was filed on January 28, 1922, against the steamship Gdansk. The vessel was sold by the marshal July 30, 1922, pursuant to a decree entered in a suit filed by a repair company. Thereupon the appellant filed a libel against the proceeds of the sale. The two libels alleged practically the same cause of action, and by order of the court were tried as one. On March 17, 1921, the vessel, carrying alien passengers, arrived at Boston Harbor and anchored at the United States Quarantine Station. The appellant, a caterer, at the request of the agents for the steamship company, furnished food and supplies for the alien passengers while they were removed temporarily from the vessel to the Quarantine Station by order of the immigration official, pursuant to chapter 29, section 15, of the Act of Congress approved February 5, 1917. The bill of the appellant also included food and supplies for government employees while they were engaged in examining the alien passengers.

[1] It is claimed that, but for the furnishing of these supplies and the care of the alien passengers, the vessel would not have been able to avoid further detention, with the consequential maintenance and feeding of passengers on board. It is urged that, because the supplies were thus furnished, the vessel was enabled to discharge its passengers and proceed on its way without further loss of time. The appellant contends that these supplies were necessary for the passengers and for the dispatch of the vessel, and by this method the obligations owing by the vessels to the passengers were performed. Upon this theory, it is contended that a maritime lien attaches to the vessel for the amount of the supplies thus furnished. It is well settled that food and supplies are necessaries, and that the furnishing of such supplies conforms to the maritime service of the vessel, and gives rise to an

action in rem. Plymouth Rock, 19 Fed. Cas. p. 899, No. 11,237; The City of Mexico (D. C.) 28 F. 239; The Mayflower (D. C.) 39 F. 41.

[2] When the vessel was libeled, she was in the possession of a receiver appointed in an equity suit in the District Court. It further appears that there was an outstanding mortgage lien. The appellant testified that the arrangements to supply the vessel were made with the owner personally and by correspondence, and that he had no relations with the officers of the vessel, and he never saw the master. The quarantine officer testified that the contract between the owner of the vessel and the appellant was made before the arrival of the vessel. It was found as a fact below that there was no arrangement made to pledge the vessel for the supplies when the contract was entered into with the company's agent, although afterwards it was approved by the master. The master assented to the removal of the passengers rather than have his ship held up. This was reported to the quarantine officer, who had presented to the master the alternative of anchoring his vessel, or taking care by other arrangements for the supply of food, so that the passengers might be removed and taken care of, and thus permit the vessel to proceed. The choice of the master to land his passengers did not involve his making a contract with the appellant, for the contract had already been made by the company which owned the vessel. It is clearly established that the appellant had no arrangement with any officer of the ship, and did not rely upon the vessel as his security. We regard these facts as insufficient to establish a maritime lien.

[3] The maritime lien imports a tacit hypothecation of the subject of it. It accompanies the property into the hands of a bona fide purchaser. It can be executed and divested only by a proceeding in rem. Vandewater v. Mills, 19 How. 82, 89, 15 L. Ed. 554. It is a secret lien, and may operate to the prejudice of general creditors and purchasers without notice; it is therefore "stricti juris." Piedmont, etc., Co. v. Seaboard, etc., Co., 254 U. S. 1, 41 S. Ct. 1, 65 L. Ed. 97.

It must not be lightly extended by construction or inference. This rule of strict construction has recently been approved by the Supreme Court in Osaka Shosen Kaisha v. Lumber Co., 260 U. S. 490, 43 S. Ct. 172, 67 L. Ed. 364; also in The Neptune (C. C. A.) 277 F. 230–232. See, also, U. S. v. The Gdansk, 295 F. 1016, decided by this court February 14, 1924. It is attempted to distinguish the case at bar from U. S. v. The Gdansk, which affirmed, without opinion, a decree of the District Court holding that a maritime lien did not exist for a charge of the United States under the Immigration Act (Comp. St. §§ 950, 960, 4289¼a–4289¼u). As we read the record, there is no warrant for the claim of a contract between the master of the vessel and the appellant. There may be a right of action in personam against the owner of the vessel who ordered the supplies, but there is no action in rem based upon an inference that the ship was pledged as security for the supplies.

[4] It is argued that by reason of section 15 of the Act of Congress of February 5, 1917, known as the Immigration Act (Comp. St. § 4289¼hh), that the maritime lien was created. That section provided:

"That upon the arrival at a port of the United States of any vessel bringing aliens it shall be the duty of the proper immigration officials to go or to send competent assistants to the vessel and there inspect all such aliens, or said immigration officials may order a temporary removal of such aliens for examination at a designated time and place, but such temporary removal shall not be considered a landing, nor shall it relieve vessels, the transportation lines, masters, agents, owners or consignees of the vessel upon which said aliens are brought to any port of the United States from any of the obligations, which, in case such aliens remain on board, would under the provisions of this Act bind the said vessels, transportation lines, masters, agents, owners, or consignees: Provided, that where removal is made to premises owned or controlled by the United States, said vessels, transportation lines, masters, agents, owners, or consignees, and each of them, shall, so long as detention there lasts, be relieved of responsibility for the safe-keeping of such aliens. Whenever a temporary removal of aliens is made the vessels or transportation lines which brought them and the masters, owners, agents, and consignees of the vessel upon which they arrive shall pay all expenses of such removal and all expenses arising during subsequent detention, pending decision on the aliens' eligibility to enter the United States and until they are either allowed to land or return to the care of the line or to the vessel which brought them, such expenses to include those of maintenance, medical treatment in hospital or elsewhere, burial in the event of death, and transfer to the vessel in the event of deportation, excepting only where they arise under the terms of any of the provisos

of section eighteen thereof. Any refusal or failure to comply with the provisions hereof shall be punished in the manner specified in section eighteen of this act."

We answered this contention in our decision in United States v. Gdansk, supra. The act of Congress does not create a lien, maritime or otherwise, for charges such as are involved here. Nothing in the act justifies the claim of a lien of any kind against the vessel, but merely provides that the expenses referred to must be borne by those interested or owners of the vessel who are responsible for the expenses incurred in its operation. In section 15 there is no provision for libeling the vessel; there is no express language creating a lien, or language appropriate to that end, and no maritime lien is created. The Athinai (D. C.) 230 F. 1017.

The decree below was properly entered.

Decree affirmed.