## THE ALJOHN.

### W. & J. TIEBOUT v. SETTANNI.

### No. 14101.

District Court, E. D. New York.
May 16, 1934.

Edward W. Drucker, of New York City, for libelant.

John T. Little, of New York City, for claimant.

CAMPBELL, District Judge.

This is a libel for articles of hardware, fittings, and materials, brought by the libelant against motor oil screw boat Aljohn, in the sum of $393.72, and alleged to have been furnished and delivered upon the credit of said vessel, between the 29th day of June, 1933, and the 31st day of July, 1933.

On June 12, 1933, the Aljohn was chartered by Albert J. Settanni, the owner, to Herbert H. Foster, under a written charter party, which among others contained the following provisions:

"4. And it is hereby further agreed that neither the said charterer, nor the master of the said Fishing Boat 'Aljohn' shall have any right, power or authority to create, incur, or suffer, or permit to be placed or imposed upon the said vessel any maritime lien, or other lien, or incumbrance or charge, or to incur any debt, obligation or charge upon the credit of the said vessel. And the said charterer shall, in due course, but in any event within fifteen days after the same becomes due and payable or enforceable against the said vessel pay, discharge, and make adequate provision for the satisfaction or discharge of any or all lawful liquidated claims and demands, which if unpaid might, in equity, in admiralty, at law, or by any statute operate as a lien, incumbrance, or charge upon the said vessel, and the charterer shall, in the event a libel be filed against the said vessel during the term of this agreement, or in the event the said

vessel is otherwise levied against or taken into custody by virtue of any legal proceedings in any court, within fifteen days thereafter, cause the vessel to be released and the asserted lien or claim to be discharged.

"5. And it is further understood and agreed that the charterer shall place and cause to be carried on board the said vessel an original copy of this charter party, and shall cause the same to be exhibited to any person having business with the said vessel which might give rise to any maritime lien or to any other lien, incumbrance, or charge whatsoever; and shall cause to be placed and kept permanently in the cabin a typewritten notice reading as follows:

" 'This vessel is chartered by Albert J. Settanni to Herbert H. Foster. Under the terms of the said charter party, neither the charterer nor the master of the said vessel, has any right, power or authority to create, incur or suffer or permit to be imposed upon the vessel, any maritime lien or other lien, incumbrance, or charge of any nature, kind, or description.' "

"10. Reserving the right to discharge, the charterer shall employ as engineer on the said vessel at his own expense and risk Wilbur Martine of 185 St. Marks Avenue, Village of Freeport, County of Nassau. It is hereby stipulated and agreed that the said Wilbur Martine shall at all times, as representative of the owner, have access to all books and records, vouchers, bills and statements kept by and in the possession of the charterer and having reference to the income of the said vessel. It is further stipulated and agreed that the said Wilbur Martine, or his successor, shall nevertheless be and remain at all times during the term of this charter the servant and agent of the charterer in all respects except as herein specifically set forth.

"In the event that the said Wilbur Martine is discharged or leaves his position the owner shall have the right to appoint his successor or successors within the foregoing limitations."

A copy of the charter party was at all times carried on the vessel, and a small copy of the notice and a large placard containing the same information was pasted on the cabin window.

During all the times mentioned in the libel, the Aljohn was lying in Randall's Bay and not at the foot of South Grove street, Freeport, Long Island, in water identified as Sportsman creek.

The license of the Aljohn, as indorsed June 29, 1933, shows Herbert H. Foster as master.

The goods in question were ordered by the said Foster from J. Charles Hecker, credit and office manager and in general charge of the office of the libelant, and were ordered and sold on the credit of the sailing vessel Maritime, and sent to the said Herbert H. Foster, at 415 South Grove street, Freeport, Long Island, N. Y. The said sailing vessel Maritime was said to be lying at the foot of South Grove street, Freeport, aforesaid, in water identified as Sportsman creek. Most of the items mentioned in the several invoices (Exhibit 1) were used on the Aljohn; some were taken elsewhere by Foster.

At the time that the contract was entered into between Foster and the libelant, no mention was made of the Aljohn, and the libelant knew nothing about the Aljohn and made no investigation as to it.

No investigation of any kind was made by the libelant to ascertain the truth of Foster's statement that he was the owner of the Maritime, and that the goods ordered were to be used on that vessel.

There is no positive evidence that Foster did not own a boat called the "Maritime"; but there is evidence, however, that no boat named the "Maritime" was lying in Freeport during the period mentioned.

The claimant went down and saw the boat at times on Sunday and knew repairs were being made; he knew the boiler people and notified them of the charter party and that he was not responsible; he did not know the libelant, but inquired of Foster as to whether material furnished by the libelant was being paid for; he was informed by Foster that everything was being taken care of, and that he had a credit with libelant for advertising done for libelant, and took his word for it.

Martine informed him that Foster had so informed him.

The contention of the libelant that under the Act of June 5, 1920, c. 250, § 30, subsec. P, 41 Stat. 1005 (46 USCA § 971), a "charterer" is a person having authority to impose a lien upon a vessel, overlooks the following provision of subsection R of that section (46 USCA § 973): "But nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, sup-

plies or other necessaries was without authority to bind the vessel therefor."

The agreement in the instant case specifically states that neither the charterer nor the master shall have the right to create, incur, or suffer or permit to be placed upon or imposed upon said vessel any maritime lien or other lien or incumbrance or charge.

The agreement also provided that a copy of the charter party shall be carried on the said vessel, and exhibited to any person having business with the vessel, and also that a notice of the agreement be permanently kept in the cabin of said vessel.

The libelant did not make inquiry with due diligence to ascertain the relations between the ship and Foster, the person giving the order, to ascertain the full extent of his authority, and the libelant has no lien on the Aljohn. United States v. Carver, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361; Morse Dry Dock & Repair Co. v. United States (C. C. A.) 1 F.(2d) 233; The Morganza (C. C. A.) 1 F.(2d) 964; The Susquehanna (D. C.) 3 F.(2d) 1014; New York Harbor Dry Dock Corp. v. United States (D. C.) 14 F.(2d) 698; The Roseway (C. C. A.) 34 F.(2d) 130; Standard Oil Co. v. United States (C. C. A.) 1 F.(2d) 961; Frey & Son v. United States (C. C. A.) 1 F.(2d) 963.

All that was necessary to give the libelant knowledge that Foster had no right to impose a lien on the Aljohn was to have had one of its employees board the boat, as the notices, conspicuously posted thereon, would have furnished the necessary information, and this the libelant did not do.

All of the cases cited by the libelant, except one, were decided prior to the case of United States v. Carver, supra, and therefore require no further consideration.

The Golden Gate (C. C. A.) 52 F.(2d) 397, the exception aforesaid, is not in point, as in that case the charter party did not prohibit the charterer from creating liens.

Even if the charterer had authority to create a lien, which he did not, the materials were never furnished by the libelant on the credit of the Aljohn.

The libelant shipped certain merchandise to 415 South Grove street, Freeport, Long Island, N. Y., on the representation of Foster that he owned the sailing vessel Maritime, which was then tied up at the foot of Grove street, Freeport, Long Island, N. Y.

The libelant did not desire to rely on Foster's credit, and libelant stated that it would look to the boat for its money. The boat the libelant was looking to was the Maritime, not the Aljohn, and it made no inquiry whatever. If Foster owned a boat called the "Maritime," that is the boat which the libelant looked to, and there is no positive proof that Foster did not own such a boat, although there is evidence that there was no such boat at Freeport, aforesaid.

There was no representation on the part of Foster that he owned the Aljohn, or had any authority to impose a lien on her, and he never even attempted to hypothecate the Aljohn or pledge her credit.

No lien was ever acquired by the libelant, or imposed on the Aljohn.

Even if materials furnished on the credit of a real or mythical vessel known as the "Maritime" were used on the Aljohn, no maritime lien on the Aljohn arose in favor of the libelant.

A maritime lien, being secret and unrecorded, is stricti juris, and cannot be conferred on the theory of unjust enrichment or subrogation, and the right of such lien cannot be extended by judicial constructive analogy or reference. The Eurana (C. C. A.) 1 F.(2d) 684; Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 41 S. Ct. 1, 65 L. Ed. 97; The James T. Furber (D. C.) 157 F. 126; The President Arthur, 279 U. S. 564, 49 S. Ct. 420, 75 L. Ed. 846.

A maritime lien imports a tacit hypothecation of the subject of it, and being a secret lien is stricti juris, and not to be lightly extended by construction or inference. The Gdansk (C. C. A.) 3 F.(2d) 565, 566.

The owner of the Aljohn did all that could reasonably be expected of him to protect people having dealings with Foster, with relation to the Aljohn. He knew the boiler people and called their attention to the charter party, and told them he was not responsible. He did not know the libelant, in fact he thought it was another concern, nor the quantity of material they were furnishing. He did not stand idly by, but made inquiry of Foster as to whether or not the merchandise going into the vessel was being paid for, and was assured by Foster that the company furnishing the merchandise was either being paid or had received proper credit for the same in advertising.

He was also informed by Martine that Foster had so informed him.

The cases cited on behalf of the libelant are not in point. Any question of agency between Martine and Settanni must be de-

termined by the expressed terms of the charter party, and is thereby strictly limited.

The libelant never acquired a maritime lien against the Aljohn.

A decree may be entered in favor of the claimant against the libelant, dismissing the libel on the merits, with costs. Settle decree on notice.

If this opinion is not considered a sufficient compliance with rule 46½ of the Rules in Admiralty (28 USCA § 723), proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the rules of this court.